AMERICAN INSURANCE COMPANY, Appellant,

v.

BUREAU OF WORKERS' COMPENSATION et al., Appellees.

[Cite as *Am. Ins. Co. v. Ohio Bur. of Workers' Comp.* (1992), 84 Ohio App.3d 288.]

Court of Appeals of Ohio,
Franklin County.

No. 92AP–628.

Decided Dec. 17, 1992.

*Droder & Miller Co., L.P.A., A. Dennis Miller* and *Bradley A. Powell*, for appellant.

*Lee Fisher*, Attorney General, *Dennis L. Hufstader* and *William J. McDonald*, Assistant Attorneys General, for appellees.

PETREE, Judge.

This is an appeal from a judgment of the Franklin County Court of Common Pleas, which granted summary judgment to defendants, the Bureau of Workers' Compensation and the Industrial Commission of Ohio (referred to collectively here as "the commission"). Plaintiff, American Insurance Company ("American"), appeals and assigns the following error for review:

"Did the trial court err, as a matter of law, in granting the defendants-appellees the Bureau of Workers' Compensation and the Industrial Commission of Ohio's motion for summary judgment and overruling plaintiff-appellant The American Insurance Company's cross-motion for summary judgment?"

The instant declaratory judgment action is the second appeal brought to this court arising from the bankruptcy of Wilson Freight Company ("Wilson Freight"), which at one time was a self-insured employer under the Ohio workers' compensation laws. In the first appeal, which this court decided in *Am. Ins. Co. v. Ohio Bur. of Workers' Comp.* (1991), 62 Ohio App.3d 921, 577 N.E.2d 756, this court considered the issue of whether American, as surety bond company for Wilson Freight's workers' compensation obligations, could accede to the rights of Wilson Freight in the proceeds of an excess indemnity insurance policy that covered these obligations as well. This court held that, while equitable subrogation usually allows the surety to step into the shoes of the creditor which the

surety paid, in this instance the surety could step into the shoes of its principal, Wilson Freight, and acquire its rights and remedies, so long as those rights and remedies were closely related to the guaranteed debt. Hence, to avoid unjust enrichment, this court allowed American to exercise Wilson Freight's right to indemnification under the excess insurance policy.

In the present case, American argues that the same principle of equitable subrogation should allow it to force the commission to exhaust an irrevocable letter of credit purchased by Wilson Freight to cover some of its workers' compensation obligations. American insists that the letter of credit proceeds should be applied to all of Wilson Freight's claims prior to charging any liability against American's bonds. Further, American desires to be credited with any handicap reimbursements to which Wilson Freight would have been entitled. The undisputed evidence submitted on summary judgment discloses the following facts:

In the 1970s, when Wilson Freight was still in business and was a qualifying self-insured employer, it purchased four surety bonds from American to comply with the statutory bonding requirements of R.C. 4123.351. These generally twelve-month bonds provided security, in the event of default by the principal, for claims arising from industrial injuries which occurred in the years 1973 through 1977. The 1973–1974 bond provided security in the amount of $230,000, the 1974–1975 bond provided security in the amount of $335,000, the 1975–1976 bond provided security in the amount of $335,000, and the 1976–1977 bond provided security in the amount of $300,000.

In 1979, instead of obtaining another bond, Wilson Freight purchased a one-year, irrevocable letter of credit from Citibank in favor of the commission for the amount of $885,000. This instrument provided that the commission could draw on the draft if it provided:

"A signed statement of the Industrial Commission of Ohio specifying that Wilson Freight Company has not performed according to the conditions and obligations as provided under the workers' compensation laws and that drawing covers injuries or occupational disease claims payments in any year *prior to and/or during the present term.*

"* * * *

"It is a condition of the letter of credit that * * * the proceeds of your draft will be used by you to meet the eventual payments of workers' compensation to claimants, and further, *that in the event your liability is satisfied, you will refund to us the amount paid, less any amounts which may have been paid by you in the meantime to the claimants.*" (Emphasis added).

It is undisputed that Wilson Freight ceased paying workers' compensation to workers in 1980 and has since gone bankrupt. It is also undisputed that a New York bankruptcy court allowed the Industrial Commission to obtain the Citibank letter of credit and post it to Wilson Freight's account at the commission. Though it is unclear exactly what amount is involved, the parties do not dispute that the commission has applied, and intends to continue to apply, the letter of credit only to claims arising in 1979 to 1980.

Given these facts, American argues that the commission should immediately be required to apply the letter of credit to the years covering 1973 through 1980. American emphasizes that the letter of credit expressly provides that it is to cover payments for the 1979–1980 term and *any* year prior to that. Further, American contends that it should be able to step into the shoes of Wilson Freight and direct the commission to first apply the letter of credit proceeds to claims payments incurred in any year prior to 1980 and then, and only then, seek payment under the bonds.

By contrast, the commission asserts that since Wilson Freight is bankrupt and obviously in default, American's bonds should be immediately payable to the commission. The commission also argues that it has discretion to apply the letter of credit as it sees fit. It seeks to apply the proceeds of the letter of credit to the 1979–1980 term because that is the time period primarily referred to in the instrument and, further, the instrument is the only security the commission has for that particular period. The commission maintains that American is really trying to obtain excess insurer status when there is absolutely nothing in the language of the bonds or any sound principle of law that confers such a status.

Like its predecessors, R.C. 4123.351(C) is a statute which allows the administrator to require self-insured employers to post bond for their obligations. R.C. 4123.351(C) provides:

"If a self-insuring employer defaults, the bureau shall recover payments of compensation or benefits from the self-insuring employer's surety bond. Payment from the bond relieves the employer of any liability for damages at common law or by statute that arises out of * * * the basis of the workers' compensation claim to the extent of the payment, except in bankruptcy proceedings."

As the Supreme Court of Ohio noted in *St. Paul Fire & Marine Ins. Co. v. Indus. Comm.* (1987), 30 Ohio St.3d 17, 30 OBR 24, 506 N.E.2d 202, a surety bond under the workers' compensation law, like those issued here, is intended to secure payment of compensation for injuries occurring within the life of the bond, regardless of when compensation is paid. The employer is granted the privilege of self-insured status by the grace of the legislature, and such status requires the self-insured employer to assume the obligation to pay claims in lieu of the broad

protection afforded by the state fund. Hence, a bond backing up this obligation shall cover the claims of workers injured during the bond's life, but those claims may go on for many years after that. For instance, if an individual worker is entitled to permanent total disability compensation payments, such payments could continue against the bond until that worker's death, depending on the individual circumstances.

■ While it is indisputable that Wilson Freight will no longer pay claims in the future, we cannot accept the commission's argument that American's bonds are immediately due and payable. By their terms, they are predicated upon claims payments as they are "accrued." Indeed, R.C. 4123.351(C) allows for the collection of "payments" from the surety bond company. There is no provision for immediate collection based on some estimate of future claims arrived at by the commission by actuarial methods.

■ However, we must agree with the commission that American's other arguments are without merit. Restatement of the Law, Security (1941) 391, Section 142, reflects the general rule that a creditor should apply payments secured by a principal in accordance with the express or implied intent of the principal at the time the suretyship relation was entered into. That is, once a creditor has struck a bargain with a principal, the principal cannot alter that relation without the assent of the creditor.

Here, there is obviously nothing in the bonds which reflects an intent that American is to be secondarily liable. American was primarily liable on its bonds and Wilson Freight's later addition of a cosurety for the same obligation did not discharge or alter American's obligations in any way. There is simply nothing in the letter of credit which would indicate that secondary status for American was bargained for or intended by the parties.

While American can step into the shoes of Wilson Freight under our prior decision, Wilson Freight could not dictate to the commission a secondary status for American *after the fact.* Hence, American cannot do so either. The principles of unjust enrichment discussed in our prior decision do not require any advantageous treatment for American's bonds here. Indeed, the commission must be mindful of the obligations owed to workers under the Workers' Compensation Act and the fact that the 1979–1980 period could go unsecured in the future if the letter of credit proceeds are exhausted.[1]

---

1. We also note that American cannot claim subsurety status either. The Restatement of the Law, Security, *supra*, at 405, Section 146, frames the following rules for determining relations between cosureties:

"Where there are two or more sureties for the same duty of the principal, the following rules are applicable to the determination of the relation between themselves:

■ Therefore, in accordance with our prior decision, we think that the commission is entitled to apply the letter of credit proceeds to any future payments arising from claims incurred during the 1979–1980 term. If the funds are not exhausted, then American can step into the shoes of Wilson Freight and request that the commission apply these residual funds to payments arising from claims incurred during prior years, including the period of bond coverage from 1973 to 1977. This residual disbursement scheme reflects the original intent of the parties, as mentioned above. Since both the residual letter of credit proceeds and the bonds are coequal obligations, they should then be applied to claims for the 1973 to 1977 period, if at all, on a coequal basis. Of course, American is only liable up to the limits of its individual bonds. If any letter of credit funds remain after such disbursement, then the letter of credit requires that its unused proceeds be returned to Citibank.

In accordance with this distribution scheme, the commission should reasonably and periodically account to American for the payments made to workers under the bonds. American is to be billed for claims arising from industrial injuries incurred during the 1973 to 1977 bond periods and should promptly pay those claims to the commission.

As for the handicap reimbursements in issue, we think that they are so closely related to the debt at hand that American can step into the shoes of Wilson Freight and claim reimbursement. To the extent that either Wilson Freight or American properly exhausted administrative remedies and complied with applicable limitation periods, such reimbursements should be offset against American's obligations on its bonds. The commission should account to American for such reimbursements and the parties may litigate the exact amount that American owes on remand.

For the foregoing reasons, plaintiff's assignment of error is sustained. The judgment of the trial court is reversed and the cause is remanded for further proceedings consistent with this opinion and in accordance with law.

*Judgment reversed
and cause remanded.*

JOHN C. YOUNG, P.J., and TYACK, J., concur.

---

"(a) The sureties may conclusively determine their relation by agreement.

"(b) The sureties are cosureties in the absence of agreement or stipulation of either to the contrary or of duties or equities imposing the principal liability on one of them.

"(c) A surety is a subsurety if he has so stipulated and is not under a duty to assume a greater liability, except to the extent that his stipulation will inequitably increase the obligation of another surety."