Trent **WASHINGTON** and Marcus Carr

v.

**ROBERTSON COUNTY,**
Tennessee, et al.

Supreme Court of Tennessee,
at Nashville.

Oct. 2, 2000.

John E. Quinn, Nashville, TN, for the petitioner, Robertson County, TN.

J. Russell Farrar and Kristin Ellis Berexa, Nashville, TN, for the petitioner, City of Springfield.

W. Gary Blackburn, Nashville, TN, for the petitioners, Mark Woodfin, Darrell Cook, Dana Heckart, and Unknown Officers.

Robert M. Burns, Nashville, TN, for the petitioners, Curtis Carney and Jeffrey Baskette.

Charles R. Ray and Jeffery S. Frensley, Nashville, TN, for the respondents, Trent Washington and Marcus Carr.

## OPINION

ANDERSON, C.J., delivered the opinion of the court, in which DROWOTA, BIRCH, HOLDER, and BARKER, JJ., joined.

In response to three questions certified to this Court from the United States District Court of the Middle District of Tennessee, we hold: that the elements of the civil claim of malicious harassment under Tenn. Code Ann. § 4-21-701(1998) are derived from the criminal offense of civil rights intimidation under Tenn. Code Ann. § 39-17-309 (1997); that a claim may be brought against a private individual or an employee of a government agency in his or her individual capacity; and that a governmental entity may be liable for the acts of its employees committed in the course and scope of employment in accordance with the doctrine of respondeat superior.

The United States District Court for the Middle District of Tennessee has certified three questions to this Court pursuant to Rule 23 of the Tennessee Supreme Court: [1]

(1) What are the elements of a claim for civil malicious harassment under Tenn.Code Ann. § 4–21–701 (1998) and which, if any, criminal statute provides the framework for the cause of action;

(2) May a claim be brought against a private individual or an employee of a government agency in his or her individual capacity for a violation of Tenn.Code Ann. § 4–21–701 (1998); and

(3) May a city or county be found liable for violations of Tenn.Code Ann. § 4–21–701 (1998) committed by its agents or employees.

We accepted these certified questions of first impression. We conclude that the elements of a civil malicious harassment action under Tenn.Code Ann. § 4–21–701 are derived from the criminal offense of civil rights intimidation under Tenn.Code Ann. § 39–17–309 (1997). We further conclude that a civil claim of malicious harassment may be brought against a private individual or an employee of a government agency in his or her individual capacity, and that a governmental entity may also be found liable for violations committed by its agents or employees in accordance with the doctrine of respondeat superior.

## *BACKGROUND*

The relevant facts were set forth by the district court in its certified request for review, which we shall summarize as follows.

On September 2, 1996, shortly after midnight, Deputy Dana Hackert was in pursuit of a car being driven in Robertson County by a suspected intoxicated driver. At one point, the car pulled to the side of the road, but then sped away as Deputy Hackert stepped out of his patrol car. The chase occurred at speeds exceeding eighty miles per hour and led into the City of Springfield. When the suspect car stopped on 21st Avenue, Deputy Hackert saw four African American males running from the car into nearby woods. One of the men was wearing a white T-shirt.

Trent Washington and Marcus Carr, both of whom are African American men, were in the yard of a friend's home on 20th Avenue. Carr was wearing a white T-shirt. Carr was stopped at gunpoint, sprayed with chemical mace, and handcuffed. Washington was chased by an officer with a police dog, stopped, ordered to lie down, and handcuffed. Washington and Carr were released without being ar-

---

1. "The Supreme Court may, at its discretion, answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, a District Court of the United States in Tennessee, or a United States Bankruptcy Court in Tennessee. This rule may be invoked when the certifying court determines that, in a proceeding before it, there are questions of law of this state which will be determinative of the cause and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court of Tennessee." Tenn .Sup.Ct.R. 23, § 1.

rested or charged with a crime when neither could be identified as having been in the suspect car pursued by officers.

The respondents, Washington and Carr, filed a civil claim in the United States District Court for the Middle District of Tennessee against the petitioners, Robertson County, the City of Springfield, and several named and unnamed law enforcement officers. The claim alleged that Washington and Carr were denied their constitutional rights in violation of 42 U.S.C. § 1983, and also alleged several state tort claims, including malicious harassment pursuant to Tenn.Code Ann. § 4–21–701 (1998). The district court certified the three issues set forth above with regard to the civil claim of malicious harassment under Tenn.Code Ann. § 4–21–701.

We accepted review of these issues of first impression.

## ELEMENTS OF MALICIOUS HARASSMENT

### Background

The civil cause of action for malicious harassment is found in Tenn.Code Ann. § 4–21–701 (1998). It presently reads as follows:

> **Creation of civil action—Damages.—** (a) There is hereby created a civil cause of action for malicious harassment.
>
> (b) A person may be liable to the victim of malicious harassment for both special and general damages, including, but not limited to, damages for emotional distress, reasonable attorney's fees and costs, and punitive damages.

Tenn.Code Ann. § 4–21–701 (1998). The companion statute to the civil claim of malicious harassment, Tenn.Code Ann. § 4–21–702, provides as follows:

> **Alternative remedies preserved.—**The remedy for malicious harassment provided in this part shall be in addition to, and shall not preclude victims from seeking, other remedies, criminal or civil, otherwise available under the law.

Tenn.Code Ann. § 4–21–702 (1998).

As originally adopted in 1990, however, Tenn.Code Ann. § 4–21–701(a) began with the phrase "in addition to the criminal penalty provided in § 39–17–313." 1990 Tenn.Public Acts ch. 908, § 1. At that time, Tenn.Code Ann. § 39–17–313 established the offense of "intimidation" as follows:

> **Intimidation.—**(a) *The general assembly finds and declares that it is the right of every person regardless of race, color, ancestry, religion or national origin, to be secure and protected from fear, intimidation, harassment, and physical harm caused by the activities of groups and individuals.* It is not the intent of this section to interfere with the exercise of rights protected by the constitution of the United States. The general assembly recognizes the constitutional right of every citizen to harbor and express beliefs on any subject whatsoever and to associate with others who share similar beliefs. The general assembly further finds that the advocacy of unlawful acts by groups or individuals against other persons or groups for the purpose of inciting and provoking damage to property and bodily injury or death to persons is not constitutionally protected, poses a threat to public order and safety, and should be subject to criminal sanctions.
>
> (b) It shall be unlawful for any person knowingly to intimidate or harass another person *because of that person's race, color, religion, ancestry, or national origin,* to:
>
> > (1) Cause physical injury to another person;
> >
> > (2) Damage, destroy, or deface any real or personal property of another person; or
> >
> > (3) Threaten, by word or act, to do the acts prohibited if there is reasonable cause to believe that any of the

acts described in subdivisions (a)(1) and (2) will occur;

(c) For purposes of this section, "deface" includes, but is not limited to, cross burnings or the placing of any word or symbol commonly associated with racial, religious or ethnic terrorism on the property of another person without permission.

Tenn.Code Ann. § 39–17–313 (1990)(emphasis added).

Shortly following the enactment of Tenn. Code Ann. § 4–21–701, however, Tenn. Code Ann. § 39–17–313 was repealed by our legislature, and an amended version of "civil rights intimation" was enacted in Tenn.Code Ann. § 39–17–309. 1990 Tenn. Pub.Acts ch. 984.[2] The first paragraph of the new statute, § 309(a), was identical to Tenn.Code Ann. § 39–17–313(a), and the remaining provisions of § 309 were also quite similar to the repealed statute. For example, they provided:

(b) A person commits the offense of intimidating others from exercising civil rights who:

(1) Injures or threatens to injure or coerces another person with the intent to unlawfully intimidate another from the free exercise or enjoyment of any right or privilege secured by the constitution or laws of the state of Tennessee;

(2) Injures or threatens to injure or coerces another person with the intent to unlawfully intimidate another because that other exercised any right or privilege secured by the constitu-

tion or laws of the United States or the constitution or laws of the state of Tennessee;

(3) Damages, destroys or defaces any real or personal property of another person with the intent to unlawfully intimidate another from the free exercise or enjoyment of any right or privilege secured by the constitution or laws of the state of Tennessee.

(4) Damages, destroys or defaces any real or personal property of another person with the intent to unlawfully intimidate another because that other exercised any right or privilege secured by the constitution or laws of the United States or the constitution or laws of the state of Tennessee.

(c) It is an offense for a person to wear a mask or disguise with the intent to violate subsection (b).

Tenn.Code Ann. § 39–17–309 (1997).[3]

Despite the repeal of Tenn.Code Ann. § 39–17–313 in 1990, the reference to it was not deleted from the language of Tenn.Code Ann. § 4–21–701 until 1996, when the legislature amended several statutory provisions "relative to technical corrections in citation and textual references with respect to criminal law." 1996 Tenn. Pub.Acts ch. 675. Thus, as it exists today, Tenn.Code Ann. § 4–21–701 does not expressly refer to Tenn.Code Ann. § 39–17–313 [repealed], nor does it cite or refer to Tenn.Code Ann. § 39–17–309.[4]

---

**2.** Tenn.Code Ann. § 4–21–701 became effective on April 17, 1990. Tenn.Code Ann. § 39–17–309 became effective on April 30, 1990.

**3.** As with § –313, a violation of § –309 is a class D felony. The criminal penalty does not preclude victims from seeking other civil or criminal remedies. Tenn.Code Ann. § 39–13–309(d) and (e) (1997).

**4.** As the parties note, confusion was further created by the fact that a series of cross references to Tenn.Code Ann. § 4–21–701 changed several times over the course of its existence. *See Young v. State Farm Mut.*

*Auto. Ins. Co.,* 868 F.Supp. 937, 942 (W.D.Tenn.1994). In 1993, for example, the Code Commission notes following § –701 stated:

This section originally contained a reference to § 39–17–313. During the 1991 replacement of Volume 2A, the publisher was instructed to change the reference from § 39–17–313 to § 39–17–309 since § 39–17–313 was repealed; however, that instruction has been superseded and the section returned to the original language."
*Id.*

With this background in mind, the petitioners argue that although Tenn.Code Ann. § 4–21–701 no longer refers to a specific criminal statute, malicious harassment should be defined by Tenn.Code Ann. § 39–17–308, which is cross-referenced *after* § –701 and proscribes harassment by telephone or in writing.[5] In the alternative, the petitioners contend that the action of malicious harassment is intended to provide a civil remedy against so-called "hate groups" and that the elements of the claim are found within Tenn.Code Ann. § 39–17–309, i.e., civil rights intimidation, which replaced the repealed Tenn.Code Ann. § 39–17–313.

The respondents argue that the court should determine the elements of the civil claim of malicious harassment simply by looking to the plain meaning of Tenn.Code Ann. § 4–21–701; they contend that "malice" is defined as "ill-will, hatred or personal spite," and that "harassment" is "destructive, injurious or harassing behavior directed at another." The respondents also contend that conduct falling under either Tenn.Code Ann. § 39–17–308 or § –309 may establish a claim of malicious harassment but that there is no need to limit the acts of malicious harassment to these or any other criminal statutes.

### Analysis

■ A basic principle of statutory construction is to ascertain and give effect to legislative intent without unduly restricting or expanding the intended scope of a statute. *Parks v. Tennessee Mun. League Risk Management Pool,* 974 S.W.2d 677, 679 (Tenn.1998) (citation omitted). This means that the Court must examine the language of a statute and, if unambiguous, apply its ordinary and plain meaning. If the language is ambiguous, the Court must look to the statutory scheme as a whole, as well as legislative history, to discern its meaning. *Id.; see also Riggs v. Burson,* 941 S.W.2d 44, 54 (Tenn.1997).

The claim of malicious harassment is found within the Tennessee Human Rights Act, which, in general, addresses discrimination based on race, creed, color, religion, sex, gender or national origin. Tenn.Code Ann. § 4–21–101 *et seq.* (1998). The terms "malicious" and "harassment" are not defined in Tenn.Code Ann. § 4–21–701 or elsewhere in the Act. Although the respondents claim that the terms are plain in meaning, the definitions they suggest would result in an overly broad interpretation that would be inconsistent with the overall statutory scheme, the legislative history, and the legislative intent.

The legislative history of Tenn.Code Ann. § 4–21–701 indicates that the supporters of the legislation favored creation of a civil remedy for so-called "hate crimes" committed by ethnic and racial supremecist groups such as the Ku Klux Klan, Aryan Nation and Skinheads. The civil remedy was to be in addition to, but separate from, the applicable criminal statutes set forth first in Tenn.Code Ann. § 39–17–313 and then in Tenn.Code An. § 39–17–309.

Numerous comments made by legislators, both in the Senate and the House, illustrate this intent by frequently discussing the civil claim in relation to the related criminal provisions that make intimidation a felony. For example:

> [It] makes it a felony, malicious harassment, if the attack on the person or on the property is done because of ... [a

---

5. "A person commits an offense who intentionally: (1) Threatens, by telephone or in writing, to take action known to be unlawful against any person, and by this actions knowingly annoys or alarms the recipient; (2) Places one (1) or more telephone calls anonymously, or at an inconvenient hour, or in an offensively repetitive manner, or without a legitimate purpose of communication, and by this actions knowingly annoys or alarms the recipient; or (3) Communicates by telephone to another that a relative or other person has been injured, killed or is ill when such communication is known to be false." Tenn.Code Ann. § 39–17–308(a) (1997).

person's] race, religion, national origin, race religion or national origin, or ancestry.

Tenn. S., *Debate on Tenn. S. 1694 on the Floor of the Senate*, 95th Gen. Assembly, 2nd Reg. Sess. (Feb. 22, 1998) (Tape S–24) (statement of Mr. Cohen). Additionally:

> 2023 is a bill that just makes it a felony to maliciously harass someone because of their race, color, religion, ancestry, or national origin. Harassment means to cause physical injury to another person [or] to damage, destroy or deface any real or personal property.

Tenn. H.R. Calendar and Rules Comm., *Hearing on Tenn. H.R.2023*, 95th Gen. Assembly, 2nd Reg. Sess. (Mar. 3, 1988) (Tape H–C & R–1) (statement of Mr. Kisber).

On several occasions, legislators observed that malicious harassment would add a civil component:

> This also adds a civil cause, it allows a person to also besides the criminal offense, it allows that person a civil, does not preclude a civil action in the case. We have heard from the people from Pulaski on several times and felt that much of their request is already covered under other sections of the criminal code. In our last meeting it was our opinion that Section 1 and 2, the inciting to riot, and that first section were already covered and that we would repeal that, and then that simply, it deletes as section, and creates a civil action in another title.

Tenn. S. Judiciary Comm., *Hearing on Tenn. S. 1611*, 96th Gen. Assembly, 2nd Reg. Sess.(Feb. 13, 1990) (Tape S–Judiciary 2) (statement of Sen. Richardson) (statement of Judge Haynes). Similarly,

> The bill takes a portion where we have had some very serious problems ... where we have been dealing with people who have come in who have attempted to incite people into various activities that would create perhaps a riot, or other civil disturbance, and this bill is

aimed at allowing a civil process against those people who incite other people to join in this type of activity.

Tenn. S., *Debate on Tenn. S. 1611 on the Floor of the Senate*, 96th Gen. Assembly, 2nd Reg. Sess. (Feb. 19, 1990) (Tape S–24) (statement of Sen. Richardson). Again, the criminal provision was referenced in conjunction with the civil action:

> [W]e already have the, the crime of malicious harassment, and it's a class D felony. It involves cross burnings, it involves ... causing physical injury to another person as a result of intimidation or harassment based upon race, color, religion or ancestry. What, what we're doing is adding a new section to the already existing felony that will say it's also illegal for those same reasons to incite others by word or act to the acts prohibited.... I'm not sure that it's not but an incremental increase in what's already included within the existing class D felony and then including the civil remedy as described.

Tenn. H.R. Judiciary Comm., *Hearing on Tenn. H.R. 1747*, 96th Gen. Assembly, 2nd Reg. Sess. (Feb. 20, 1990) (Tape H–Judiciary–1) (statement of Rep. Purcell). Finally,

> This bill is a very simple bill.... It increases the penalty of malicious harassment. We need this bill for the problems that we have had with Aryan Nation, the Ku Klux Klan, in Pulaski, and the Skinheads that come here and invade and pester the good community and the citizenry.

Tenn. H.R., *Debate on Tenn. H.R. 1747/S. 1611 on the Floor of the House*, 96th Gen. Assembly, 2nd Reg. Sess. (Apr. 9, 1990) (Tape H 66) (statement of Rep. DePriest).

▮ While we recognize that Tenn.Code Ann. § 4–21–701 no longer contains a specific reference to a criminal statute, we conclude that given the legislative history and intent, the elements of malicious harassment are found by examining its

counterpart criminal statutes.[6] We find it unnecessary and illogical to rely on the repealed statute, Tenn.Code Ann. § 39–17–313, given the similar provisions of Tenn.Code Ann. § 39–17–309 presently in effect. For example, like § –313(a), the provisions of § 309(a) state that "[t]he general assembly finds and declares that it is the right of every person regardless of race, color, ancestry, religion or national origin, to be secure and protected from *fear, intimidation, harassment and bodily injury* caused by the activities of groups and individuals." Tenn.Code Ann. § 39–17–309(a) (1997) (emphasis added).

■ Accordingly, we conclude that a claim of malicious harassment requires not only that a person acted maliciously, i.e., ill-will, hatred or spite, but also that a person unlawfully intimidated another from the free exercise or enjoyment of a constitutional right by injuring or threatening to injure or coercing another person or by damaging, destroying or defacing any real or personal property of another person. *See* Tenn.Code Ann. § 39–17–309(b) (1997).

### Liability of Private Individual

The individual petitioners, Woodfin, Cook, Heckart, Carney and Baskette, argue that a government employee may not be held individually liable for a violation of Tenn.Code Ann. § 4–21–701, because the statute is directed at associations and groups. The respondents, Washington and Carr, assert that individual liability is consistent with the statutory definition of "person" and furthers the purpose of the statute.[7]

---

**6.** We disagree with the petitioners' argument that malicious harassment is limited to the acts set forth in Tenn.Code Ann. § 39–17–308, simply because that statute is contained in a cross reference *after* Tenn.Code Ann. § 4–21–701. Indeed, we observe that several of the parties have alluded to statutes contained in cross references. These cross references are included by the Code Commission, not the legislature, and they do not reflect legislative intent in interpreting a statute.

We begin our analysis by examining the language of Tenn.Code Ann. § 4–21–701 (1998), which states that "[a] *person* may be liable to the victim of malicious harassment." (Emphasis added). Moreover, as discussed above, the malicious harassment statute is included among the provisions of the Tennessee Human Rights Act (THRA). Tenn.Code Ann. § 4–21–101, *et seq.* (1998). The Act defines "person" as follows:

> "Person" includes *one (1) or more individuals,* governments, governmental agencies, public authorities, labor organizations, corporations, legal representatives, partnerships, associations, trustees, trustees in bankruptcy, receivers, mutual companies, joint stock companies, trusts, unincorporated organizations or other organized groups of persons.

Tenn.Code Ann. § 4–21–102(14) (1998) (emphasis added).

■ Notwithstanding this plain definition, the petitioners contend that Tenn. Code Ann. § 4–21–701 is aimed solely at groups or associations that engage in acts of malicious harassment. This position, however, cannot be reconciled with the statute. The legislature specifically used the term "person" in Tenn.Code Ann. § 4–21–701, the definition of which includes "one (1) or more individuals...." Tenn. Code Ann. § 4–21–102(14) (1998). Moreover, the legislature is presumed to know of its prior enactments and the state of the law when it enacts legislation. *Riggs v. Burson,* 941 S.W.2d at 54. Had the legislature intended to exclude individuals or employees of government agencies from liability for malicious harassment, it would

---

**7.** Petitioners Robertson County and the City of Springfield agree that individual liability is appropriate under Tenn.Code Ann. § 4–21–701. As counsel for Robertson County has stated, "given the very personal nature of 'malicious harassment' or a 'hate-crime,' it would seem incongruous to not permit the victim to sue the specific perpetrator."

not have used the word "person" in Tenn. Code Ann. § 4–21–701.[8]

The petitioners nonetheless urge us to hold that there is no individual liability under the Tennessee Human Rights Act, arguing that there is no individual liability under Title VII in the federal system and that we should follow federal law. The petitioners cite, for example, *Wathen v. General Elec. Co.*, 115 F.3d 400 (6th Cir. 1997), in which the Sixth Circuit held that individual liability could not be imposed on a supervisor for acts of sexual harassment. After discussing the definition of "employer" under 42 U.S.C. § 2000e (b), which includes a person engaged in an industry affecting commerce who has 15 or more employees and any agent of such person, the court concluded that "the statutory scheme itself indicates that Congress did not intend to impose individual liability on employees." *Id.*

In *Carr v. United Parcel Service*, 955 S.W.2d 832, 834 (Tenn.1997), we addressed a similar issue as it related to a statute in the Tennessee Human Rights Act that defines employer to include "persons employing eight (8) or more persons within the state, or any person acting as an agent of the employer, directly or indirectly." *See* Tenn.Code Ann. § 4–21–102(4)(1998). In concluding, like a majority of federal courts, that there was no individual liability for sexual harassment under § –102(4), we observed that the definition of "employer," the small business exemption, and the "any agent" provision found in Tenn.Code Ann. § 4–21–102(4) were substantially similar to the definition of "employer" under Title VII.

Our holding in *Carr* does not govern all interpretations under the THRA. Each statutory interpretation will be influenced by the subject matter, the plain language, the legislative intent, and history of the

particular statute. As we said in *Carr*, we "are neither bound by nor limited by federal law when interpreting the THRA." *Id.* at 835. Thus, despite finding that there was no individual liability under Tenn. Code Ann. § 4–21–102(4), we went on to hold that under an accomplice liability provision in the THRA, Tenn.Code Ann. § 4–21–301(a)(2), "an individual who aids, abets, incites, compels, or commands an employer to engage in employment-related discrimination has violated the THRA." *Id.* at 836.

■ Accordingly, *Carr* stands for, among other things, the principle that this Court's interpretations of the THRA are not bound or limited by federal law. In this case, the plain language of the malicious harassment statute states that "[a] person may be liable to the victim of malicious harassment." Tenn.Code Ann. § 4–21–701 (1998). The definition of "person" includes "one (1) or more individuals." Tenn.Code Ann. § 4–21–102(14) (1998). It would defy a plain and logical interpretation of these provisions to conclude that an individual cannot be liable for malicious harassment. Accordingly, we conclude that an individual, including an employee working for a government agency, may be liable for malicious harassment pursuant to Tenn.Code Ann. § 4–21–701.

### Liability of City or County

Petitioners Robertson County and the City of Springfield contend that a city or county is immune from liability for its employees' acts of malicious harassment under the Governmental Tort Liability Act. They rely upon the following statute:

Except as may be otherwise provided in this chapter, all governmental entities shall be immune from suit for any injury which may result from the activities of said governmental entities wherein said

---

8. We also note once again that Tenn.Code Ann. § 39–17–309(a) (1997) states in part that "[t]he general assembly finds and declares that it is the right of every person regardless of race, color, ancestry, religion or national

origin, to be secure and protected from fear, intimidation, harassment, and bodily injury caused by the activities of groups *and individuals.*" (Emphasis added).

governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary.

Tenn.Code Ann. § 29–20–201(a) (1980).

Again, we begin our analysis by looking at the language of Tenn.Code Ann. § 4–21–701 (1998), which states that "[a] person may be liable to the victim of malicious harassment." As discussed above, the statutory definition of "person" includes "governments, governmental agencies, [and] public authorities." Tenn.Code Ann. § 4–21–102(14) (1998).

 As a matter of statutory construction, a specific statutory provision, such as the definition of "person" under Tenn.Code Ann. § 4–21–102(14), will control over a more general statutory provision. *See State v. Cauthern,* 967 S.W.2d 726, 735 (Tenn.1998). Moreover, the plain language evinces the legislature's intent to remove any governmental immunity in matters involving the THRA. *See, e.g., Sanders v. Lanier,* 968 S.W.2d 787, 790 (Tenn.1998); *Johnson v. South Cent. Human Resource Agency,* 926 S.W.2d 951, 953 (Tenn.Ct.App.1996). Accordingly, we conclude that a government or a government agency may be held liable for acts committed by its employees.

The more difficult question is determining whether and when liability is imputed to a governmental entity. Petitioners Robertson County and the City of Springfield argue that they are liable only if their employees have committed acts of malicious harassment pursuant to a government policy or custom. The respondents contend that the government is liable for the acts of its employees committed in the scope and course of employment pursuant to the doctrine of respondeat superior.

The petitioners argue that this issue is controlled by *Monell v. Department of Soc. Serv. of N.Y.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), a case in which the United States Supreme Court addressed 42 U.S.C. § 1983. The language of § 1983 states that "[e]very person who, under color or of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured...." 42 U.S.C. § 1983 (1988). The Supreme Court concluded:

> [T]he language of § 1983, read against the background of the ... legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort. In particular, we conclude that a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a muncipality cannot be held liable under § 1983 on a *respondeat superior* theory.

*Monell,* 436 U.S. at 691–92, 98 S.Ct. at 2036 (italics in original). The Supreme Court has recently reaffirmed this holding in *Board of County Comm'r v. Brown,* 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

However, unlike the specific language and history of the federal statute, 42 U.S.C. § 1983, Tennessee's statute, Tenn. Code Ann. § 4–21–701, does not contain language that could be construed to limit a government liability to acts in furtherance of a policy or custom. Since the Act does not specifically address or limit the manner of determining governmental liability, the plain language of the statute must be interpreted to include respondeat superior liability, a doctrine well-established in our common law. *See Riggs v. Burson,* 941 S.W.2d at 54 (legislature presumed to know existing state of the law). Moreover, we have applied the theory of respondeat superior in other contexts under the Tennessee Human Rights Act. *See Carr,* 955 S.W.2d at 837; *see also Parker v. Warren County Util. Dist.,* 2 S.W.3d 170, 173

(Tenn.1999); *Sanders v. Lanier*, 968 S.W.2d at 789.

We also observe that other jurisdictions have applied respondeat superior in similar circumstances as the present case. For example, in *Holder v. Ivanjack*, 39 F.Supp.2d 965 (N.D.Ill.1999), the plaintiff filed a civil action against several city police officers and the city itself based on the Illinois Hate Crime Act. The city contended that the suit should be dismissed because a "hate-crime" by definition was motivated by personal animus and therefore not within the scope of the officers' employment. The district court ruled:

> Under Illinois law, [the plaintiff's] claim against the City pursuant to *respondeat superior* is permissible if the individual police officers' conduct was within the scope of their employment. . . .

> Conduct is within the scope of employment if: "(a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; [and] (c) it is actuated, at least in part, by a purpose to serve the master." . . . Conduct is not within the scope of employment if the employee's actions were different from those authorized . . . or were performed purely in the employee's self interest.

*Holder v. Ivanjack*, 39 F.Supp.2d at 971 (italics in original); *see also DiPino v. Davis*, 354 Md. 18, 729 A.2d 354 (1999) (respondeat superior applied to government where its agents commit constitutional violations in the scope of employment).

Accordingly, we conclude that governmental liability in these circumstances is to be determined through the traditional doctrine of respondeat superior.

### CONCLUSION

After consideration of the record and applicable authority, we conclude that the elements of the civil claim of malicious harassment under Tenn.Code Ann. § 4–21–701(1998) are derived from the criminal offense of civil rights intimidation under Tenn.Code Ann. § 39–17–309 (1997); that a claim may be brought against a private individual or an employee of a government agency in his or her individual capacity; and that a governmental entity may be liable for the acts of its employees committed in the course and scope of employment pursuant to the doctrine of respondeat superior.

Costs of the appeal shall be assessed equally among the petitioners.