IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
January 7, 2004 Session

## STATE OF TENNESSEE, EX REL. ANNE B. POPE
### v.
## UNITED STATES FIRE INSURANCE COMPANY, ET AL.

**Appeal by permission from the Court of Appeals, Eastern Division**
**Chancery Court for Hamilton County**
**No. 02-0079     W. Frank Brown, III, Chancellor**

---

**No. E2002-01092-SC-R11-CV - Filed August 27, 2004**

---

We granted permission to appeal pursuant to Rule 11 of the Tennessee Rules of Appellate Procedure to determine whether the liability of a surety company that issues bonds to self-insured employers under Tennessee Code Annotated section 50-6-405(b) is limited to the penal amount listed on the face of each bond. Because section 50-6-405(b) requires that bonds be of a single, continuous term, we conclude that a surety company's liability is limited to the penal amount on the face of the bonds. Accordingly, we affirm the judgment of the Court of Appeals.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Affirmed**

ADOLPHO A. BIRCH, JR., J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

Thomas L. Wyatt and Thomas Greenholtz, Chattanooga, Tennessee, for the appellants/intervening petitioners, Carlise Cagle, David Seale, Bradley Hatfield, Doug West, Sr., Richard Cole, James Workman, Silas Passmore, Jim T. Dickson and Eddie Hart, Sr.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; and Sarah Ann Hiestand, Senior Counsel, Financial Division, for the appellee, State of Tennessee, ex rel. Anne B. Pope.

William L. Norton, III, and Eric W. Smith, Nashville, Tennessee, for the appellee, United States Fire Insurance Company, Inc.

John M. Gillum and Brett A. Oeser, Nashville, Tennessee, for the appellee, United States Fidelity

and Guaranty Company.

William E. Godbold, III, and M. Andrew Pippenger, Chattanooga, Tennessee, for the appellee, Employers Reinsurance Corporation.

**OPINION**

I. Facts and Procedural History

North American Royalties, Inc., and its subsidiaries ("NAR") operated a large foundry in Chattanooga. NAR was self-insured for workers' compensation liability, and as such, NAR was statutorily obligated to furnish proof to the Commissioner of the Department of Commerce and Insurance that it was financially able to pay current workers' compensation claims as well as those arising in the future. See Tenn. Code Ann. § 50-6-405(a)(2) (2003).[1] To ensure the making of these workers' compensation payments as required, NAR purchased surety bonds from several surety companies. See Tenn. Code Ann. § 50-6-405(b)(1) (2003). These bonds, filed with the Commissioner, obligated the respective surety companies to fulfill NAR's obligations under the Workers' Compensation Law.

In November 2001, NAR stopped paying its workers' compensation claims and filed for bankruptcy protection in the United States Bankruptcy Court for the Eastern District of Tennessee, Southern Division. On January 11, 2002, the bankruptcy court lifted the automatic stay regarding NAR's surety bonds and ordered that all workers' compensation claims be decided in the Chancery Court for Hamilton County. The State of Tennessee, through the Commissioner of Commerce and Insurance, filed a "Verified Petition of the Tennessee Commissioner of Commerce and Insurance" against six of the companies that had filed as surety for NAR's workers' compensation. The petition was filed in the Chancery Court for Hamilton County, Tennessee, on January 22, 2002. Because NAR had breached its obligations under the Workers' Compensation Law, the State sought through this petition to force the respondent surety companies[2] to deposit into the registry of the court the

---

[1]Although the numbering and the organization of Tennessee Code Annotated section 50-6-405 has changed during the time period in which the surety bonds were issued (1974-2001), the overall meaning of the statute has remained fairly constant during that time.

[2]According to Chancellor W. Frank Brown's Order filed March 5, 2002, in the Chancery Court for Hamilton County, the bonds and the surety companies obligated in this case are:
- United States Fire Insurance Company ("USFIC") for a bond in the amount of $975,000; effective 11-18-1999; cancelled 11-23-2001.
- United States Fidelity and Guaranty Company ("USF&G"); effective 2-12-1996 for a bond in the amount of $350,000; increased to $600,000 effective 10-01-1998 (with aggregate liability not to exceed $600,000); cancelled effective 2-12-2000.
- Employers Reinsurance Corporation ("ERC"); effective 6-30-1988 for a bond in the amount of $200,000; increased to $300,000 effective 8-2-1990; increased to $350,000 effective 11-03-1993; cancelled 2-12-1996.
- Utica Mutual Insurance Company, effective 7-01-1985 for a bond in the amount of $200,000; cancelled 7-01-

(continued...)

face amount of the last rider to each of several surety bonds purchased by NAR to cover its workers' compensation obligations.

Several former employees of NAR who were workers' compensation obligees intervened in the cause.[3] The intervenors, joined by several surety companies,[4] filed objections to the State's petition. The objectors contended that the sureties were obligated to pay up to the face amount of their respective bonds for each year the bonds were in effect, thereby effectively aggregating the bond amounts from year to year. In a show cause hearing, the State and counsel for the sureties agreed that USFIC, USF&G, and ERC would pay the face amount of the bonds in exchange for a full release from all claims against each respective entity. The intervenors subsequently filed a petition in which they objected, in greater detail, to the proposed agreed order submitted by the Commissioner and the sureties.

The trial court conducted an evidentiary hearing to determine the extent of the sureties' liability. The intervenors contended that because Tennessee Code Annotated section 50-6-405(b)(2) requires self-insurers to file annually certain information so that the required amount of security may be annually calculated, the General Assembly intended the sureties' liability to be for the face amount for each annual period during which a particular surety ensured the payment of NAR's workers' compensation obligations (in other words, the cumulative sum of the bonds for each year in effect). The sureties contended, on the other hand, that their liability was limited to the face amount of the bonds regardless of the number of years the bonds were in effect.

Two people familiar with the customs and practices of the self-insuring process testified at

---

[2](...continued)
1988.

- Insurance Company of North America; effective 7-01-1976 for a bond in the amount of $68,000; increased to $80,000 effective 7-01-1977; increased to $125,000 effective 9-01-1979; increased to $200,000 effective 9-01-1983; cancelled 7-01-1985.
- An alleged Safeco Insurance Company of America bond; effective from 7-01-1974 until 7-01-1976; amount to be determined by the Court.

The Order stated that bonds owed by Utica Mutual Insurance Company, Insurance Company of North America and Safeco Insurance Company of America are not to be paid until a future determination is made regarding the claims that have been made against those surety companies. The chancery court found that the penalty sums of the bonds issued by USFIC ($975,000), USF&G ($600,000) and ERC ($350,000) should be made available immediately. Upon paying the penal sums, each Respondent "shall be released and discharged from any further liability on the Bonds." Therefore, the bonds at issue in this case are those from USFIC, USG&G, and ERC.

[3]Each intervening petitioner was injured during a different period of time for which one of the surety companies secured payment of NAR's workers' compensation obligations.

[4]USFIC, USF&G, and Insurance Company of North America were the surety companies that filed objections to the State's Petition on February 7, 2002, alleging that the expedited injunctive relief sought by the Commissioner was inappropriate. ERC filed its objection on February 11, 2002. Safeco Insurance Company of America filed an objection on February 7, 2002, in which it claims that there is no immediate or irreparable injury to redress as there was neither a written bond nor claimants under any alleged Safeco bond.

the evidentiary hearing. According to Mark Brothers, the Director of the Self-Insurance Surplus Lines for Workers' Compensation Division ("Self-Insurance Division") within the Department of Commerce and Insurance,[5] once an employer is qualified as a self-insurer, no further qualification is necessary. A self-insurer is, however, required to file certified financial reports and its loss history annually with the Self-Insurance Division so that its ability to pay claims may be reviewed and the required bond amount may be determined. If the Self-Insurance Division determines that a bond should be increased, the increase may be accomplished through the issuance of a rider, rather than by a new bond. A self-insurer is not required to post a new bond instrument each year if the security in place is deemed sufficient.

Mark Gasaway, a surety manager for USF&G, testified at the evidentiary hearing that the USF&G bond in this case, issued on a statutory form, was originally issued in 1996 in the face amount of $350,000. There was no expiration date on the bond form; the form states that the bond may be cancelled upon giving thirty days' written notice to the Commissioner. The Self-Insurance Division sent a letter to NAR in 1998 requesting that the amount of the USF&G bond be increased to $600,000. The letter requested only that the amount of the existing bond be increased, not that a new bond be posted. USF&G issued a rider amending the original bond to increase the face amount of the bond from $350,000 to $600,000. The rider, accepted by the Self-Insurance Division, stated that "in no event shall the aggregate liability of [USF&G] on account of any and all acts exceed the larger amount." USF&G claimed it had only one bond in effect for the period between February 1996 and 2000, and the annual premium notices sent to NAR indicated that only one bond was in force.

The bonds submitted by the sureties and accepted by the State were printed on forms provided by the Commissioner. The form states that the surety "shall be liable, within the penal sum mentioned herein, for the default of the principal." NAR paid and the surety companies accepted annual premiums for the bonds at issue. The premiums were adjusted annually as NAR's ability to pay workers' compensation claims was re-evaluated.

Ruling against the intervenors, the trial court entered an order essentially adopting the agreed order proposed by the Commissioner and the sureties.[6] Because the bond funds were inadequate to

---

[5]The purpose of this Division is to approve employers for self-insurance and to regulate self-insurance for workers' compensation, according to Mr. Brothers.

[6]The order from the chancery court stated that:
1.      The aggregate liability of United States Fire Insurance Company is limited to the penal sum of its bond in the amount of $975,000.
2.      The aggregate liability of United States Fidelity & Guaranty Company is limited to the penal sum of its bond in the amount of $600,000.
3.      The aggregate liability of Employers Reinsurance Corporation is limited to the penal sum of its bond in the amount of $350,000.
4.      The above Respondents shall be released from any further liability when those bonds shall be fully discharged.

(continued...)

pay the workers' compensation benefits owed by NAR to injured employees, most claimants received less than $1,000 as compensation for the medical benefits to which they are entitled under the Tennessee Workers' Compensation Law.

The Court of Appeals affirmed the trial court. The intervenors filed an Application for Permission to Appeal pursuant to Rule 11 of the Tennessee Rules of Appellate Procedure. This Court granted permission to appeal to consider whether the liability of surety companies that issue bonds to self-insured employers pursuant to Tennessee Code Annotated section 50-6-405(b) is limited to the face amount of the bonds.

## II. Standard of Review

In order to resolve the issue before this Court, we must interpret the meaning of Tennessee Code Annotated section 50-6-405(b) and the surety bond contracts. Both the interpretation of statutes and the interpretation of contracts are questions of law and, therefore, require a de novo review on appeal with no presumption of correctness given to the lower courts' conclusions of law. See State v. Williams, 38 S.W.3d 532, 535 (Tenn. 2001) (indicating that the construction of statutes and the application of the law to the facts are questions of law); see also Guiliano v. Cleo, Inc., 995 S.W.2d 88, 95 (Tenn. 1999) ( holding that "[t]he interpretation of a contract is a matter of law that requires a de novo review on appeal"); Sherman v. Cate, 16 S.W.2d 25, 25-26 (Tenn. 1929) (finding that since a surety's statutory bond is a contract, courts should determine the intent of the parties to the bond in the same way in which courts would construe a contract).

## III. Analysis

We are faced with a legal issue that has not been previously addressed by our courts. Many states have debated whether the liability under statutorily-required surety bonds renewed annually are cumulative (the aggregate of the face amount for each year the bond was in force) or continuous (limited to the face amount of the bond). See, e.g., United States v. Am. Sur. Co. of N.Y., 172 F.2d 135 (2d Cir. 1949); United States v. Md. Cas. Co., 129 F. Supp. 45 (D. Md. 1955); Giese v. Engelhardt, 175 N.W.2d 578 (N.D. 1970); United States Fid. & Guar. Co. v. Christoffel, 566 P.2d 308 (Ariz. Ct. App. 1977); Am. Ins. Co. v. Bureau of Workers' Comp., 616 N.E.2d 979 (Ohio Ct. App. 1992). No court in this state, however, has yet determined whether surety companies' liability under bonds issued pursuant to Tennessee Code Annotated section 50-6-405(b) is cumulative for each year in force or limited to the face amount of the bonds.

The intervenors contend that the liability of the surety companies is cumulative because the legislative intent of the Workers' Compensation Law is to protect workers and to ensure that the workers' compensation obligations of self-insured employers are adequately secured against default.

[6](...continued)
Order, Docket No. 02-0079 (Feb. 28, 2002).

The sureties and the State argue that the liability of the sureties is limited to the face amount of the bonds.

Because a statutory bond is at issue, we first look to the statute. According to Aetna Casualty & Surety Co. v. Woods:

> Although a bond is nonetheless a contract because it is required by a statute, statutory bonds are construed in the light of the statute creating the obligation secured and the purposes for which the bond is required, as disclosed in the statute. The statute which provides for the giving of a bond becomes a part of the bond and imports into the bond any conditions prescribed by the statute which are not in fact included in the bond as written. Although the obligor and his surety may assume a greater obligation than that required by the statute, it is presumed that the intention of the parties was to execute such a bond as the law required.

565 S.W.2d 861, 864 (Tenn. 1978) (footnote omitted). We can assume that when a bond was executed to comply with a statute, absent anything indicating otherwise, the parties intended to comply with the statute and nothing more. See id.; see also Christoffel, 566 P.2d at 310. Therefore, we must first turn to the language of the statute, Tennessee Code Annotated section 50-6-405(b), under which the surety bonds were issued, before we consider the Workers' Compensation Law and the language of the bond contracts.

### A. Statutory Construction of Tennessee Code Annotated Section 50-6-405

Our task is to discern the legislative intent behind Tennessee Code Annotated section 50-6-405(b) (2003).[7] See Exch. Mut. Ins. Co. v. Olsen, 655 S.W.2d 938, 940 (Tenn. 1983) (stating that when deciding a surety company's liability, "the requirements of the statute, and not the terms of the bond, are controlling"); see also Aetna Cas. & Sur. Co. v. Woods, 565 S.W.2d 861, 864 (Tenn. 1978) (stating that "statutory bonds are construed in the light of the statute creating the obligation secured and the purposes for which the bond is required, as disclosed in the statute"). "A basic principle of statutory construction is to ascertain and give effect to legislative intent without unduly restricting or expanding the intended scope of a statute." Washington v. Robertson County, Tennessee, 29 S.W.3d 466, 471 (Tenn. 2000). The Court may use all rules of construction to aid in effectuating legislative intent. Browder v. Morris, 975 S.W.2d 308, 311 (Tenn. 1998). The Court must first examine the language of the statute itself and apply its natural and ordinary meaning. Washington, 29 S.W.3d at 471. If the language is ambiguous, the Court then looks to the statutory scheme as a whole, as well as legislative history, to discern its meaning. Id.

Our initial step is to consider the plain wording of section 50-6-405. However, placing that provision in the appropriate context may first be helpful. The Workers' Compensation Law requires employers to establish adequate financial responsibility for workers' compensation claims. See

---

[7]See supra note 1.

Tenn. Code Ann. § 50-6-405(a) (2003).  In order to do so, the employer may either (1) obtain a policy of workers' compensation insurance; or (2) obtain qualification as a "self-insured" employer. Id.  In order to qualify as a "self-insured" employer, the employer has to:  (1) prove its financial ability to pay compensable workers' compensation claims; and (2) guarantee payment of those claims.  Tenn. Code Ann. § 50-6-405(a)(2) (2003).

The actual provisions of section 50-6-405(b) to be interpreted are the following, which provide that an employer seeking to self-insure shall file and maintain with the Department of Commerce and Insurance:

> (1) A deposit of acceptable negotiable securities with a market value of not less than one hundred twenty-five thousand dollars ($125,000) or a bond in the same amount. The securities or bond shall be held by the commissioner of commerce and insurance and be conditioned to run directly for the benefit of the employees subject to the Workers' Compensation Law and may be enforced by them directly in an action in their name.  All indemnity bonds filed under this provision of law must be issued by an insurance company authorized to do business in Tennessee and must contain a provision requiring the issuer to give the commissioner of commerce and insurance thirty (30) days' written notice of intention to revoke or cancel such bond;

> (2) Evidence of the employer's financial ability to pay all claims that may arise against the employer in the form of an annual certified financial statement, including a statement of assets and liabilities and a statement of profit and loss, to be filed no later than sixty (60) days after the company's immediately preceding fiscal year. Such financial statements are to include a detailed accounting for reserves for losses outstanding incurred in connection with workers' compensation self-insurance. Such financial statement shall be kept confidential by the commissioner of commerce and insurance and shall not be construed to be a public record pursuant to title 10, chapter 7.

Tenn. Code Ann. § 50-6-405(b)(1)-(2) (2003).

To guarantee payment of claims, the employer shall file and maintain with the Department of Commerce and Insurance either (1) a deposit of acceptable, negotiable securities with a market value of not less than $125,000; or (2) a surety bond of the same amount.  Tenn. Code Ann. § 50-6-405(b)(1) (2003).  The securities or the bond shall "be conditioned to run directly for the benefit of the employees subject to the Workers' Compensation Law." Id.  According to Mark Brothers, the Commissioner's Director of Self-Insurance, only one deposit needs to be made or one bond needs to be posted with the Department of Commerce and Insurance.

To demonstrate its financial ability to pay workers' compensation claims, the employer submits an annual certified financial statement to the Department of Commerce and Insurance. Tenn. Code Ann. § 50-6-405(b)(2) (2003).  The Self-Insurance Division reviews the financial

information and determines whether the employer is financially able to pay its claims and the amount of guarantee that the employer must post with the Self-Insurance Division, according to the testimony of Mark Brothers. In addition, he states that the employer must annually submit prior claims history information, claims loss information, and workers' compensation payroll to the Self-Insurance Division.

When the employer has provided satisfactory proof of its financial ability to pay workers' compensation claims and has guaranteed payment of those obligations with a surety bond or deposit of acceptable negotiable securities, then the Commissioner shall issue a certificate of authority allowing the employer to self-insure. Tenn. Code Ann. § 50-6-405(b)(3) (2003). If the Commissioner deems the bond or securities inadequate or unsafe, she may require that the guarantee be increased. Tenn. Code Ann. § 50-6-405(e) (2003).

Based on the above statutory language, we find nothing to indicate that the bonds are intended to be cumulative in nature. The above statutory provisions do not require the employer to file a new bond annually. Rather, the employer is only required to post "a bond" and to submit "an annual certified financial statement" in order to be certified as a self-insured employer. Tenn. Code Ann. § 50-6-405(b)(1)-(2) (2003). Section 50-6-405 does not even require that the bond be reviewed annually, nor does it indicate that the employer's self-insurance certificate ever expires.

Additionally, section 50-6-405(b)(1) provides for thirty days' written notice of the issuer's intention to revoke or cancel a bond, indicating that the bond is intended to be a continuous, not an annual, obligation. See, e.g., State ex rel. Guste v. Aetna Cas. & Sur. Co., 429 So. 2d 106, 109 (La. 1983); Fourth & First Bank & Trust Co. v. Fid. & Deposit Co. of Md., 281 S.W. 785, 787-88 (Tenn. 1926); United States Fid. & Guar. Co. v. Christoffel, 566 P.2d 308, 311 (Ariz. Ct. App. 1977). Moreover, the employer has the option of depositing negotiable securities, which are not required to be deposited annually, in lieu of a surety bond pursuant to section 50-6-405(b)(1). Because the bond and the negotiable securities are interchangeable, it would be logical for them to be treated in the same manner.

In sum, the plain language of section 50-6-405(b) does not contain any language suggesting that the surety bonds are cumulative; instead, the language of the statute indicates that the bonds are to be of a single, continuous term and, therefore, liability is limited to the face amount of the bond.

Our conclusion that the surety bonds are not cumulative is supported by the custom and practice of the Self-Insurance Division, as described by the testimony of Mark Brothers. See Consumer Advocate Div. v. Greer, 967 S.W.2d 759, 761 (Tenn. 1998) ("[A] state agency's interpretation of a statute that the agency is charged to enforce is entitled to great weight in determining legislative intent."). The Self-Insurance Division conducts an annual review of the claims history of self-insuring employers and reassesses the employer's financial ability to pay workers' compensation claims. The Commissioner may require an increase in the amount of the surety bond posted by the self-insured employer based on that assessment. See Tenn. Code Ann. § 50-6-405(e) (2003). For instance, the Self-Insurance Division requested that the amount of the

USF&G bond be increased in 1998; USF&G issued a rider increasing the penal sum of the bond which was accepted by the Self-Insurance Division. The Self-Insurance Division did not interpret section 50-6-405(b) to require the employer to post a new bond annually and interpreted the maximum liability of the sureties to be the penal sum of the bonds.

Because we do not find section 50-6-405(b) to be ambiguous, it is not necessary to consider the statutory scheme of the Workers' Compensation Law as a whole to discern the legislative intent, as the appellants have urged us to do. Even though the workers' compensation laws and insurance policies protecting employees should be construed to offer as much protection as possible for employees, see Welch v. Reiling, 99 S.W.2d 216, 218 (Tenn. 1936), we note that "[t]his Court has consistently resisted the invitation of litigants to read something into the Workers' Compensation statutes that was not within the language of the Act." Malkiewicz v. R. R. Donnelley & Sons Co., 794 S.W.2d 728, 731 (Tenn. 1990) (Fones, J., dissenting).

Unfortunately, it is evident that the face amounts of the bonds posted by NAR are insufficient to cover NAR's workers' compensation obligations to its former employees. The lack of adequate security–although regrettable–is not the result of NAR's and the sureties' failure to comply with section 50-6-405(b). Such inability may be, however, the result of flaws in the current system of assessing an employer's financial status. NAR was not mandated by section 50-6-405 or any other statute to post a new bond each year. Any changes to the compensation laws are in the domain of the legislature, not the courts.

### B. Language of the Bond

Having resolved that Tennessee Code Annotated section 50-6-405(b) indicates that the liability of the sureties is limited to the face amount of the bonds, we finally turn to the language of the bonds. Some cases have relied primarily on interpreting the language of the bond at issue when determining whether the bond is of a single, continuous term or created cumulative liability. See generally State ex rel. Guste v. Aetna Cas. & Sur. Co., 429 So. 2d 106 (La. 1983); Fourth & First Bank & Trust Co. v. Fid. & Deposit Co. of Md., 281 S.W. 785 (Tenn. 1926); Green v. United States Fid. & Guar. Co., 185 S.W. 726 (Tenn. 1916). Although we have determined that the statutory bonds are construed in "the light of the statute creating the obligation secured" and we assume that the parties intended to comply with the requirements of the statute and nothing more, it is important to look at the language of the bond to see if the sureties assumed an obligation greater than that which is required by section 50-6-405. Aetna Cas. & Sur. Co. v. Woods, 565 S.W.2d 861, 864 (Tenn. 1978).

The language of the bonds only serves to confirm our conclusion that the liability created by the bonds is intended by both the legislature and the parties to be non-cumulative. Each bond states that:

> This Bond may be cancelled at any time by the surety upon giving thirty (30) days'
> written notice to the Commissioner of Commerce and Insurance of the State of

Tennessee, in which event the liability of the surety shall, at the expiration of the said thirty days, cease and determine, except as to such liability of the principal on account of injury or death to any of its employees, as may have accrued prior to the expiration of said thirty days, *it being understood that the surety shall be liable, within the penal sum mentioned herein*, for the default of the principal in fully discharging any liability on its part accruing during the life of this obligation.

The statutory form, provided by the Commissioner,[8] shows an effective date of the bond and does not state an expiration date. The form provides that the bond may be cancelled upon thirty days' written notice to the Self-Insurance Division. Although NAR paid premiums annually to the sureties, annual premiums do not make a series of contracts. See United States v. Am. Sur. Co. of N.Y., 172 F.2d 135, 140 (2d Cir. 1949) (Swan, J., dissenting). The rider executed by USF&G and accepted by the Self-Insurance Division states: "[I]n no event shall the aggregate liability of United States Fidelity and Guaranty Company on account of any and all act or acts exceed the larger amount [penal sum]." Clearly, the parties did not intend that the liability created by the surety bonds would be cumulative and instead intended the bonds to be of a single, continuous term with the maximum liability of the penal sum of the bonds. Therefore, the sureties did not assume an obligation which is greater than that required by section 50-6-405.

## IV. Conclusion

We hold that the plain language of Tennessee Code Annotated section 50-6-405(b) indicates that the bonds are to be of a single, continuous term and, therefore, the liability of the surety companies is limited to the penal sums of the bonds. Furthermore, based on the language of the surety bonds, the sureties did not assume an obligation which is greater than that required by section 50-6-405. Accordingly, we affirm the findings of the Court of Appeals. Costs of this appeal are taxed against the appellants/intervening petitioners, Carlise Cagle, David Seale, Bradley Hatfield, Doug West, Sr., Richard Cole, James Workman, Silas Passmore, Jim T. Dickson and Eddie Hart, Sr., and their sureties, for which execution may issue if necessary.

_____
ADOLPHO A. BIRCH, JR., JUSTICE

---

[8]"We assume that the Commissioner in drafting the bond intended to exact from the obligor and surety the obligation required by the statute and no more, since that was the extent of the Commissioner's duty in this respect under the statute; and, considering the disadvantageous bargaining position of the taxpayer and his surety, we cannot ascribe to them, on the basis of the evidence in this record, an intention to assume an obligation greater than the one required by the statute." Woods, 565 S.W.2d at 866.