893 F.2d 1335
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
George D. MAXWELL, Plaintiff-Appellant,
v.
Freddie CONN, Peggy Sawyer, David Pendergrass and Tracy
Alexander, Defendants-Appellees.
 No. 89-5060.
 United States Court of Appeals, Sixth Circuit.
 Jan. 18, 1990.
 
 Before BOYCE F. MARTIN, Jr., NATHANIEL R. JONES and RALPH B. GUY, Jr., Circuit Judges.
 PER CURIAM.
 
 
 1
 George Maxwell, plaintiff, appeals from the district court's denial of his motion for a new trial or to alter or amend judgment with regard to the jury verdict dismissing his prisoner civil rights complaint under 42 U.S.C. Sec. 1983 (1982). Maxwell alleged that the Coffee County, Tennessee, Sheriff's Department and jail personnel were deliberately indifferent to his serious medical needs at the time of his incarceration in violation of the Eighth Amendment. For the following reasons, we affirm the judgment of the district court.
 
 I.
 
 2
 George Maxwell became an inmate at the Coffee County jail on August 11, 1987. He had been arrested for writing two bad checks totalling $600.00. Freddie Conn, the Sheriff of Coffee County, has primary responsibility for running the Coffee County jail. However, day to day authority for jail operations has been delegated to Peggy Sawyer.
 
 
 3
 On the morning of August 17, 1987, jail personnel escorted Maxwell to General Sessions Court. On the way, Maxwell fell and claimed to be injured and in pain. However, he stated he was able to walk, and, in fact, walked to court and back without assistance. Maxwell was told he would be able to see a physician at the first opportunity, but he was not seen by a doctor until August 19, 1987. Maxwell reported his injury to jail personnel both verbally and in writing. Also, a jail employee saw the abscess which had formed on Maxwell's left buttock.
 
 
 4
 Upon examination by Dr. Harris, the jail physician, Maxwell was sent immediately to Coffee Medical Center to have the abscess lanced and drained. He was operated on by Dr. Yu. He was returned to the jail with instructions to shower and have the dressing changed twice daily. Maxwell's cellmates objected to his showering the cell for fear of contagion. Arrangements were made for Maxwell to shower in the medical room. However, he was permitted to shower only three-four times per week instead of twice daily as prescribed.
 
 
 5
 Maxwell's wound became reinfected and consequently he had to be hospitalized three more times during the period of October 21 through December 18, 1987. When not in the hospital, he was taken to Coffee County Medical Center daily by jail personnel so that Dr. Yu could clean and dress the wound. Maxwell was released from jail on March 17, 1988. The county was billed more that $22,000 in medical expenses for Maxwell's treatment.
 
 
 6
 Maxwell filed a pro-se complaint and application to proceed in forma pauperis under 42 U.S.C. Sec. 1983, on October 28, 1987, in United States District Court for the Eastern District of Tennessee, Judge Jarvis presiding. He named as defendants, Freddie Conn, Sheriff of Coffee County, and Peggy Sawyer, David Pendergrass, Tracy Alexander, and other sheriff's department employees. The district court entered an order approving the application the same day. Maxwell filed an amended complaint on January 29, 1988. In this complaint Maxwell raised two claims. First, he alleged that the Sheriff's Department employees denied him timely medical treatment. Second, he claimed that they failed to provide prescribed follow up care. Maxwell alleged that these failings were intentional and/or negligent. On appeal, however, Maxwell raises only the timely treatment claim.
 
 
 7
 Maxwell's complaint was tried before a jury on October 31 and November 1, 1988. At the outset of the trial, the court dismissed Maxwell's pendent state claims without prejudice claims and modified the pre-trial order it had previously issued. After trial, the jury returned a verdict in favor of the defendants. On November 14, 1988 Maxwell filed a motion for new trial and/or to alter or amend judgment. On December 12, 1988, the district court denied the motion. Maxwell filed timely notice of appeal on January 11, 1989.
 
 II.
 
 8
 Maxwell appeals the district court's denial of his motion for a new trial or to alter or amend judgment and to set aside the jury's verdict only as to his allegations that the defendants failed to provide timely medical care. He argues that the evidence shows that he was denied access to medical personnel capable of evaluating his need for treatment, and that the Coffee County Jail's medical care system did not meet minimal standards of decency.
 
 
 9
 A motion for a new trial may be granted by a district court only when the jury's verdict is against the clear weight of the evidence. An appellate court should not disturb the trial court's ruling on a motion for a new trial unless the court has abused its discretion. National Polymer Products v. Borg-Warner Corp., 660 F.2d 171, 178 (6th Cir.1981). The Eighth Amendment provides that no cruel or unusual punishment may be inflicted on prisoners. Deliberate indifference to serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain forbidden by the Eighth Amendment. Estelle v. Gambel 429 U.S. 97, 97 S.Ct. 285 (1976), rehearing denied, 429 U.S. 1066 (1977).
 
 
 10
 Deliberate indifference to serious medical needs is shown when jail officials have prevented an inmate from receiving prescribed treatment, when an inmate is denied access to medical personnel capable of evaluating the need for treatment, or when the jail's medical care system does not meet minimal standards of decency. Parrish v. Johnson, 800 F.2d 600, 602 (6th Cir.1986)
 
 
 11
 Whether a prisoner has suffered unduly by the failure to provide medical treatment is to be determined in view of the totality of the circumstances. In making this determination the trier of fact should consider the practicalities of the situation including the extent of the injury, the realistic possibility of treatment and the possible consequences to the prisoner of failing to provide immediate medical attention.
 
 
 12
 Westlake v. Lucas, 537 F.2d 857, 860, n. 4 (6th Cir.1976) (citations omitted). In both Parrish and Westlake, prisoners with severe medical problems (paraplegics in Parrish and inmates suffering from bleeding ulcers in Westlake ) were found to have a cause of action when their medical needs were callously ignored for an extended period of time.
 
 
 13
 In the instant case, Maxwell was required to wait 2 1/2 days for medical treatment until the regularly scheduled doctor's visit. He represented to his jailers that his injury resulted from a fall on the wet floor, yet he walked to court, sat through a hearing and walked back without assistance. The jury heard evidence that after his fall, Maxwell told defendant Jailer Tracy that he was allright and could walk to court. The jury also heard testimony that another jail employee was told that Maxwell had fallen and injured himself during the night, which was reported to Sergeant Sawyer, and that Sawyer responded that Maxwell could see the doctor the next day. Jailer Lee Rose testified that he saw Maxwell's abscess, but the exact date was not established. The jury also heard evidence that when Jailer Alexander reported to Sawyer that Maxwell had hurt his back, Sawyer inquired if he has moving and mobile. When the reply was affirmative, Sawyer instructed Alexander to inform Maxwell he could see the doctor on the 19th.
 
 
 14
 The evidence of Maxwell's condition during the two day period between his fall and when he was examined by Dr. Harris consists mostly of Maxwell's own testimony. Neither of the former inmates who testified were cellmates during that period. Jesse Thomas White, who testified on behalf of the defense, was a cellmate but was not questioned about Maxwell's condition after he fell.
 
 
 15
 The jury also heard testimony which undermined Maxwell's credibility. First, they heard Maxwell deny he had ever suffered from boils, carbuncles or skin problems. However, a witness who had known Maxwell for 20 years recalls seeing a "knot on his backside" while Maxwell was playing football with her son at the age of 10 or 12. Moreover, Dr. Harris testified that in his experience abscesses don't become as large as Maxwell's in three days. Dr. Yu also testified that it was doubtful the abscess could have become so advanced in a two day period. White, the former cellmate, testified that Maxwell had told him that he had hurt himself before he came to jail but was going to stage a fall in the shower that morning. White also stated he saw Maxwell trading his medication for cigarettes. Finally, Maxwell admitted to having written a medical request to see a doctor for treatment of hemorrhoids prior to this instance, but later admitted the report was false and that the was merely trying to get out of his cell.
 
 
 16
 There is no evidence to support the claim that the delay between Maxwell's fall on Monday and his examination by Dr. Harris on Wednesday was seriously detrimental or that the abscess was of a life threatening or emergency nature. While Dr. Harris testified that an abscess is more serious than a backache and that abscesses are normally quite tender and sore, this testimony does not support Maxwell's account of being forced to lay naked and immobilized for 2 1/2 days because of the pain in his back. There is no evidence that the delay affected the treatment of his condition, contributed to the reccurrance of the condition, extended his period of recovery or increased his suffering during that period. There was not sufficient evidence to establish that it was medically inappropriate or that there were adverse consequences from the decision to have Maxwell examined during the regularly scheduled doctor's visit. It is clear that the evidence at trial does not support Maxwell's claim that Jail personnel were deliberately indifferent to his serious medical needs. Thus, because the jury verdict was not against the clear weight of the evidence, we find that the district court did not abuse its discretion in denying Maxwell's motion for a new trial.
 
 II.
 
 17
 Maxwell next argues that the trial court erred in modifying the pre-trial order by dismissing his pendent state law negligence claims. The district court gave three reasons for this decision. First, the court stated that inclusion of these claims would confuse the jury. Second, the court stated that under T.C.A. Sec. 29-20-101 et seq, (1989 Supp.), the Tennessee Governmental Tort Liability Act ("TGTLA"), "the circuit court shall have exclusive original jurisdiction over any action brought under this chapter and shall hear and decide such suits without the intervention of the jury." Third, the court stated that claims under state common law and the governmental tort claim act "belong in state court, not in federal court."
 
 
 18
 Maxwell argues that modification of a pre-trial order is evaluated under "a manifest injustice to the parties" standard. Fed.R.Civ.P. 16(e). He contends that the court behaved as though "it were exercising its discretion with respect to the question of accepting pendent jurisdiction in the first instance, rather than modifying a final pretrial order wherein it had already accepted such jurisdiction. Maxwell further states that the court had the jurisdictional authority to hear the claims brought under the Tennessee Governmental Tort Liability Act without presenting the issue to the jury. Moreover, Maxwell argues that because Maxwell's common law negligence claims are not affected by his tort liability claims, the District Court may exercise pendent jurisdiction over them.
 
 
 19
 The three prerequisites for the existence of pendent jurisdiction are: (1) that the federal claims must have substance sufficient to confer subject matter jurisdiction on the court; (2) the state and federal claims must derive from a common nucleus of operative fact and (3) the plaintiffs claims are such that he would ordinarily be expected to try them all in one judicial proceeding. Gaff v. Federal Deposit Insurance Corp., 828 F.2d 1145, 1149-50 (6th Cir.1987).
 
 
 20
 The issue of whether pendent jurisdiction has been properly assumed is one which remains open throughout the litigation, and therefore Maxwell's arguments regarding modification of a pre-trial order are not applicable. United Mine Workers of America v. Gibbs, 383 U.S. 715 (1966). While the federal claims could ordinarily confer jurisdiction over Maxwell's TGTLA claims because they arise out of the same nucleus of operative fact, the decision of the Tennessee legislature to grant original jurisdiction to state circuit courts belies Maxwell's claim that he could expect to try them in the same judicial proceeding as his federal Sec. 1983 claim. Maxwell concedes that in Beddingfield v. City of Pulaski, Tenn. 666 F.Supp. 1064, 1065 (M.D.Tenn 1987), later proceeding, 861 F.2d 968 (6th Cir.1988), the court determined that because the TGTLA gives exclusive original jurisdiction to state circuit courts, claims under the Act "probably cannot" be heard by a federal court exercising jurisdiction. Id. at 1066-67. Thus, we find that the district court's decision not to exercise pendent jurisdiction over the TGTLA claims is proper.
 
 
 21
 With regard to Maxwell's state common law negligence claims, the trial court felt that inclusion of these claims would confuse the jury with respect to the Sec. 1983 claims. "Pendent jurisdiction is a doctrine of discretion, not plaintiff's right. It's justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims." Gibbs, 383 U.S. at 726. The district court's concerns of jury confusion goes is central to the fairness consideration, which overrides concerns of convenience and judicial economy. Therefore, the district court properly declined to exercise its discretion by extending pendent jurisdiction over Maxwell's state common law negligence claims.
 
 III.
 
 22
 Accordingly, for the reasons stated above, we AFFIRM the judgment of the district court.