**Russell FROMUTH, Plaintiff,**

v.

**METROPOLITAN GOVERNMENT OF NASHVILLE and Davidson County, Tennessee, et al., Defendants.**

No. 3:99–0852.

United States District Court, M.D. Tennessee, Nashville Division.

Aug. 30, 2001.

Jeffrey S. Frensley, Jon C. Peeler, Nashville, TN, for plaintiff.

## ORDER

WISEMAN, Senior District Judge.

Plaintiff Russell Fromuth ("Plaintiff" or "Fromuth") brings this action under 42 U.S.C. § 1983, alleging deprivation of his Fourth Amendment rights resulting from the use of excessive force by Metro police officers and supplemental state law claims of assault and battery, outrageous conduct, malicious harassment, and negligence, all arising out of the same incident. The Plaintiff alleges the § 1983 violation against Metropolitan Government of Nashville and Davidson County, Tennessee ("Metro") and police officer Defendants Jonathan Welch ("Officer Welch"), Shane Stokes ("Officer Stokes"), Samuel Cooley ("Officer Cooley"), Anthony Bourk ("Sergeant Bourk"), and Stephen Lewis ("Sergeant Lewis")(collectively "all Defendants"). The Plaintiff also alleges the state law claims of outrageous conduct, malicious harassment, and negligence (both under the Tennessee Governmental Tort Liability Act ("TGTLA") and at common law) against all Defendants. The Plaintiff also brings state law claims of assault and battery against Officer Welch.

Before the Court are multiple motions for summary judgment by the various Defendants. Metro moves for summary judgment with respect all of Plaintiff's claims. Sergeant Lewis also moves for summary judgment with respect to all of Plaintiff's claims. Officers Stokes, Cooley, Welch, and Sergeant Bourk move for summary judgment with respect to the Plaintiff's state law claims of outrageous conduct, malicious harassment, and negligence.

For the reasons set forth in the accompanying memorandum, the motion of Metro as to Plaintiff's § 1983 claim is GRANTED, the motion of Sergeant Lewis as to Plaintiff's § 1983 claim is DENIED, and the motions of all Defendants as to Plaintiff's state law claims of outrageous conduct, malicious harassment, and negligence are GRANTED.

This case is remanded to Magistrate Judge Juliet Griffin for further case management and the entry of a final case management order pursuant to Local Rule 11.

It is so ORDERED.

## MEMORANDUM

Plaintiff Russell Fromuth ("Plaintiff" or "Fromuth") brings this action under 42 U.S.C. § 1983, alleging deprivation of his Fourth Amendment rights resulting from the use of excessive force by Metro police officers and supplemental state law claims of assault and battery, outrageous conduct, malicious harassment, and negligence, all arising out of the same incident. The Plaintiff alleges the § 1983 violation against Metropolitan Government of Nashville and Davidson County, Tennessee ("Metro") and police officer Defendants Jonathan Welch ("Officer Welch"), Shane Stokes ("Officer Stokes"), Samuel Cooley ("Officer Cooley"), Anthony Bourk ("Sergeant Bourk"), and Stephen Lewis ("Sergeant Lewis")(collectively "all Defendants"). The Plaintiff also alleges the state law claims of outrageous conduct,

malicious harassment, and negligence (both under the Tennessee Governmental Tort Liability Act ("TGTLA") and at common law) against all Defendants. The Plaintiff also brings state law claims of assault and battery against Officer Welch.

Before the Court are multiple motions for summary judgment by the various Defendants. Metro moves for summary judgment with respect all of Plaintiff's claims. Sergeant Lewis also moves for summary judgment with respect to all of Plaintiff's claims. Officers Stokes, Cooley, Welch, and Sergeant Bourk move ·for summary judgment with respect to the Plaintiff's state law claims of outrageous conduct, malicious harassment, and negligence.

For the following reasons, the motion of Metro as to Plaintiff's § 1983 claim is GRANTED, the motion of Sergeant Lewis as to Plaintiff's § 1983 claim is DENIED, and the motions of all Defendants as to Plaintiff's state law claims of outrageous conduct, malicious harassment, and negligence are GRANTED.

## I. Background

On August 31, 1998, detectives with the Metro Police Department reported a bur-. glary in process at the United States Post Office on Glen Echo Drive in the Green Hills area of Nashville, Tennessee. All five defendant police officers, Sergeant Bourk, Sergeant Lewis, Officer Stokes, Officer Welch, and Officer Cooley, (collectively, the "individual Defendants"), were on duty at the time, and responded to the call and arrived at approximately 2:00 a.m. Plaintiff was inside the Post Office when they arrived. Plaintiff and an accomplice had just broken open the stamp machine in the lobby with a crowbar and a "grinder" (electric hand tool).

After a few minutes, the police officers ordered Plaintiff to come out of the Post Office. Plaintiff complied with this initial command and· exited the building through the front doors. The parties dispute what happened next and the degree to which Defendant resisted, if any. The incident was videotaped ("the tape") by a third party and aired on television. This tape is entered as Plaintiff's exhibit 1 to the Plaintiff's response to the Defendants' motions for summary judgment. The tape starts with Plaintiff lying face down on the ground in front of the Post Office. Sergeant Bourk is seated on top of the Plaintiff, and Officers Stokes and Welch are kicking the Plaintiff. Officer Cooley is to the left of the Plaintiff, and Sergeant Lewis is on the right. After the Plaintiff was kicked, Officer Welch administered several blows with the butt of his shotgun to the Plaintiff's back. The tape then shows Officer Cooley dragging Plaintiff by his feet away from the Post Office entry and toward a patrol car. The tape also shows Officer Welch grabbing the Plaintiff in the groin area before placing him in the police car. In addition, Officer Cooley is shown rolling Plaintiff from his back onto his stomach.

After the incident, the Metropolitan Police Department ("the Department") conducted an internal investigation and concluded that Officer Welch and Sergeant Lewis had violated departmental policy and disciplined both officers. ˙ Specifically, the Department found that Officer Welch had violated the Department's use of force policy by utilizing shotgun butt strikes against the Plaintiff. Each of the individual Defendants and the Assistant Chief of Police, however, have indicated that they did not agree with that determination, and that the use of a shotgun butt strikes was an accepted practice or custom even though it was not taught by the Department.

The Department also concluded that Sergeant Lewis failed to take appropriate action in light of the force being utilized by the other Defendants against the Plaintiff. Each of the individual Defendants believes that the disciplinary action against both officers is unwarranted and that none of them did anything inappropriate in the course of this matter.

## II. Standard of Review

Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476–80 (6th Cir.1989). The party seeking summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. In responding to a motion for summary judgment, the non-moving party cannot rest on its pleadings, but must present some "specific facts showing that there is a genuine issue for trial." *Id.*

The Supreme Court concluded in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), that a dispute about a material fact is "genuine" within the meaning of Rule 56 of the Federal Rules of Civil Procedure only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." *Id.* at 252, 106 S.Ct. 2505. Of course, the Court is to construe the evidence and all inferences to be drawn from it in the light most favorable to the nonmoving party. *Id.* at 255, 106 S.Ct. 2505.

## III. 42 U.S.C. § 1983 claims

To prevail on a claim under 42 U.S.C. § 1983, a Plaintiff must show that he or she was deprived of a right secured by the federal Constitution or the laws of the United States, and that such deprivation occurred under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155–56, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). Here, Plaintiff claims that his Fourth Amendment rights were violated by the Defendants. The Fourth Amendment protects persons from the use of excessive force by law enforcement officers in the course of an arrest, investigatory detention or any other "seizure." *Graham v. Connor*, 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

### A. Metro

*Monell v. Department of Social Svcs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) established that municipalities and other local governments are persons within the meaning of § 1983, and therefore may face liability under § 1983. *Monell*, however, limits municipal liability to situations where the deprivation of constitutional rights results from an official policy or custom of the municipality. *Id.* at 690, 98 S.Ct. 2018. In addition, *Monell* prevents a municipality from being held liable under a respondeat superior theory. *Id.* at 691, 98 S.Ct. 2018.

In his paragraph 24 of the amended complaint, Plaintiff specifically alleges that Metro (1) authorized, permitted and tolerated the policy, custom and practice of the unconstitutional and excessive use of force by its officers by failing to appoint, promote, train, discipline and supervise them; (2) failed to promulgate procedures and policies for the use of force that are consistent with the Fourth Amendment of the U.S. Constitution; and (3) permitted the policy and custom of using unreasonable

force to exist and to be followed by the Metro Police Department. Plaintiff thus claims that Metro's failure to train, supervise, and implement policy concerning the use of non-deadly force constitutes a policy or custom that led to his injuries.

██ In *City of Canton, Ohio v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), the Supreme Court articulated the standard for failure to train claims. The inadequacy of police training may serve as the basis for § 1983 liability "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 387, 109 S.Ct. 1197. The Court further explained that a municipality can be liable under § 1983 only where its policies are the moving force behind the constitutional violation. Thus, only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983.

██ There are two types of situations in which a court can find deliberate indifference in the failure to train police officers. One is the situation where a city fails to react to repeated complaints of constitutional violations by its officers. *See id* at 390, n. 11, 109 S.Ct. 1197. Plaintiff does not claim a pattern of violations of excessive force in this case. The second situation occurs when the city fails to provide adequate training in light of foreseeable serious consequences that could result from lack of instruction. In *Harris*, the Court cited lack of instruction on the use of firearms or in the use of deadly force as examples of what could constitute deliberate indifference. *Id.* at 390, 109 S.Ct. 1197. Thus, when the need to train is "so obvious" that the failure to do so could properly be characterized as "deliberate

indifference" to constitutional rights, liability against a municipality under § 1983 is proper. *See Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985).

██ In *Russo v. City of Cincinnati*, 953 F.2d 1036 (6th Cir.1992), the Sixth Circuit Court of Appeals applied the *Harris* test and further defined what a plaintiff had to prove in order to demonstrate that a training program is the moving force behind a constitutional violation. To prove a failure to train claim, the Plaintiff must establish: (1) that the training program was inadequate for the tasks that officers must perform, (2) that the inadequacy was the result of the city's deliberate indifference, and (3) that the inadequacy was "closely related to" or "actually caused the ... injury." *Id.* at 1046 (citing *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir.1989) and *Harris* ); *See Berry v. City of Detroit*, 25 F.3d 1342, 1346 (6th Cir.1994) (same).

In the case at bar, the alleged constitutional violation is the use of excessive force by a Metro police officer against the Plaintiff by striking him multiple times with the butt of his shotgun. The Metro policy for the use of non-deadly force reads as follows:

### V. PARAMETERS FOR NON–DEADLY FORCE

A. When the use of force is needed, if feasible, officers will identify themselves and determine which options in the force continuum will best de-escalate the situation in the most safe, reasonable, and prudent manner possible.

B. Officers are permitted to use department authorized non-deadly force techniques and equipment for resolution of incidents to:

    1. Protect themselves or another from bodily injury;

    2. Restrain or subdue a resistant person for whom there is probable

cause to arrest or reasonable suspicion to stop;

3. Prevent damage to property; and/or

4. Bring an unlawful situation in which there is lawful authority for the officer to intervene, safely and effectively under control.

C. Officers are *not* permitted to use hobble restraints, leg shackles, plastic ties, or any other device to place any subject in a manner which is likely to produce positional asphyxia.

D. Officers are permitted to use only that force which is reasonable and necessary under the particular circumstances to protect themselves or others from bodily injury and only after other reasonable alternatives have been exhausted or it is determined that such alternative action(s) would have been ineffective under the circumstances.

As the Plaintiff points out, there is nothing in the non-deadly force policy addressing the use of shotgun butts as a means of force. Further, the Plaintiff suggests that to the extent a use of force technique is commonly recognized as appropriate by the individual officers but is not taught at the police academy and is not approved of by the chief policymaker Emmett Turner, Metro exercises deliberate indifference by failing to instruct its officers as to that technique. Therefore, according to the Plaintiff, failing to train its officers in the use of shotgun butts, where individual officers view it as an acceptable means of force but the police chief does not, raises a question of material fact as to whether this failure constitutes deliberate indifference by Metro leading to inadequacy in training that was closely related to the injuries suffered by Plaintiff.

 Unfortunately for the Plaintiff, this is not a situation where the need to train its officers how to use their shotgun butts

is "so obvious" as to constitute deliberate indifference. Although there are contrary understandings as to whether and when the use of shotgun butts as a means of force is appropriate, it is clear that the policy of Metro is that officers use "only that force which is reasonable and necessary." The policy itself and the training of the officers accordingly does not rise to the level of indifference that results where there is a lack of instruction in an area of obvious danger, such as the use of deadly force (*see Harris* ). Plaintiff may be correct in establishing a discrepancy in the viewpoints within the police station, but this discrepancy falls far short of deliberate neglect of the Plaintiff's rights.

In addition, to require the city to catalogue every potential situation that might arise in the force context and then document it, draft a written policy on it, and train its officers on it would be both unrealistic and unproductive in achieving the goal of creating an easy to follow directive that educates officers as well as protects a suspect's constitutional rights. Here there is no material question of fact as to whether the city's failure to instruct the individual defendants on the use of firearms constitutes deliberate indifference. With the facts construed in Plaintiff's favor, there is clearly not enough evidence to support Plaintiff's failure to train claim. Accordingly, Metro's motion for summary judgment as to Plaintiff's 1983 claim is GRANTED.

### B. Sergeant Lewis

### 1. Excessive Force

Sergeant Lewis moves for summary judgment on Fromuth's § 1983 claim of excessive force, claiming that he cannot be held liable for excessive force, or in the alternative, is entitled to qualified immunity.

■ There are three theories under which Sergeant Lewis can be held liable for excessive force: (1) active participation in the use of excessive force; (2) supervision of the officer who used excessive force; (3) he owed the victim a duty of protection against the use of excessive force. *Glover v. Durham,* 520 U.S. 1157, 117 S.Ct. 1337, 137 L.Ed.2d 496 (1997).

■ From the record, it is clear that Sergeant Lewis did not himself use any excessive force toward the Plaintiff. As to the second theory, Sergeant Lewis asserts that he was not the direct supervision of the other officers at the scene, and that he was not supervising Bourk, Stokes, and Welch as they were interacting with the Plaintiff. Lewis particularly notes that the Post Office is in Sergeant Bourk's district, not his district.

Sergeant Lewis, however, was giving orders to the other officers at the scene (Stokes Depo. pp. 22, 30–31; Cooley Depo. pp. 46–47). Other than Sergeant Bourk, he was the ranking officer at the scene. In addition, Metro suspended Lewis for his actions on the scene. All of these facts raise a material question of fact as to whether Lewis was supervising an officer using excessive force.

■ To hold a police officer liable under the third theory, the Plaintiff must show that: (1) the officer observed or had reason to know that excessive force would be or was being used and (2) the officer had both the opportunity and the means to prevent the harm from occurring. *Turner v. Scott,* 119 F.3d 425 (6th Cir.1997). In his deposition, Sergeant Lewis claims that he did not see any use of force toward the Plaintiff because his back was turned to Bourk, Stokes, and Welch, and he was concentrating on removing the second and third suspects from the Post Office. Lewis also asserts that he was being careful not to turn his back on the Post Office so as to avoid ambush by a second or third suspect.

Plaintiff, however, disputes the material fact of whether Sergeant Lewis was in fact aware of the force being used on the Plaintiff. Plaintiff cites the video as evidence which shows that Sergeant Lewis is in close proximity to the other officers and the Plaintiff, and infers that as a sergeant issuing orders on the scene, Sergeant Lewis must have had some awareness of the force being used on the Plaintiff. In addition, if Sergeant Lewis were aware of the use of force, his proximity to the Plaintiff and authority as a sergeant would have certainly enabled him to order the cessation of force against the Plaintiff.

Because there is a dispute as to the material facts of whether Sergeant Lewis was supervising an officer using excessive force and whether he was aware of and possessed the ability to stop the use of excessive force, Sergeant Lewis' motion for summary judgment is DENIED as to Plaintiff's § 1983 claim for excessive force.

## 2. Qualified Immunity

Sergeant Lewis claims in the alternative that he is entitled to qualified immunity as an officer acting in his official capacity who did not violate a clearly established statutory or constitutional right.

■ Government officials performing discretionary functions are entitled to qualified immunity from civil suits for damages arising out of the performance of their official duties as long as their actions could reasonably be thought consistent with the rights they are alleged to have violated. *See Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). A government official is not entitled to qualified immunity if his conduct results in the violation of a clearly established statutory or constitutional

right of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

■ To withstand a motion for summary judgment based on a claim of qualified immunity, the plaintiff must state a violation of clearly established law, and present evidence sufficient to create a genuine issue of material fact as to whether the defendant committed the acts that violated the law. *See Dickerson v. McClellan,* 101 F.3d 1151, 1158 (6th Cir.1996); *Adams v. Metiva,* 31 F.3d 375, 386 (6th Cir.1994).

■ Here, the right in question is the Fourth Amendment right to be free from excessive force, a right which is clearly established. As a result, the qualified immunity inquiry is identical to the excessive force question. Because the Plaintiff has raised a material question of fact as to whether Sergeant Lewis' actions violate the Fourth Amendment's prohibition against excessive force, Sergeant Lewis is not entitled to qualified immunity, and his motion for summary judgment is DENIED on these grounds as well.

## IV.  State law claims

### A.  Outrageous Conduct

All Defendants move for summary judgment on Plaintiff's state law outrageous conduct claim, arguing that the conduct in question falls short of outrageous conduct.

■ Under Tennessee law, the tort of outrageous conduct requires that (1) the conduct complained of must have been outrageous, not tolerated in civilized society, and (2) as a result of the outrageous conduct, there must be a serious mental injury. *Medlin v. Allied Inv. Co.,* 217 Tenn. 469, 398 S.W.2d 270, 274 (1966). Outrageous conduct has further been explained

by the Tennessee Supreme Court as follows:

> It is not enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damage for another tort. Liability has been found only where the conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterably intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Restatement Second of Torts § 46, comment d; *Medlin v. Allied Inv. Co.,* 217 Tenn. 469, 398 S.W.2d 270, 274 (1966).

■ In this case, even with the facts construed in the Plaintiff's favor, the Plaintiff has presented no evidence of mental injury. Without anything more than his pleading of outrageous conduct as evidence of serious mental injury, Plaintiff cannot survive the Defendants' motions for summary judgment on his outrageous conduct claim. Thus, all Defendants' motions are GRANTED as to Plaintiff's outrageous conduct claims.

### B.  Malicious Harassment

All Defendants also move for summary judgment on Plaintiff's state law malicious harassment claim, arguing that malicious harassment causes of action are limited to civil rights motives.

The civil cause of action for malicious harassment is defined in Tenn.Code Ann. § 4–21–701. It reads as follows:

(a) There is hereby created a civil cause of action for malicious harassment.

(b) A person may be liable to the victim of malicious harassment for both special and general damages, including, but not limited to, damages for emotional distress, reasonable attorney's fees and costs, and punitive damages.

*Tenn.Code Ann.* §§ 4–21–701. Based on the legislative history and the repeal of companion statutes, the application of this statute has been less than clear. When this legislation was originally adopted in 1990, *Tenn.Code Ann.* §§ 4–21–701(a) began with the phrase, "In addition to the criminal penalty provided in §§ 39–17–313 ..." 1990 Tenn.Public Acts ch. 908, §§ 1. At the time, *Tenn.Code Ann.* §§ 39–17–313 [repealed] was a Class D felony which defined the offense of civil rights intimidation. Days after *Tenn.Code Ann.* §§ 4–21–701 was enacted, the Tennessee legislature repealed *Tenn.Code Ann.* §§ 39–17–313. However, shortly thereafter, the legislature enacted another civil rights intimidation felony statute, *Tenn.Code Ann.* §§ 39–17–309, which was substantially similar to §§ 39–17–313 [repealed]. 1990 Tenn.Pub.Acts ch. 984. The first paragraph of §§ 309(a), exactly replicated *Tenn.Code Ann.* §§ 39–17–313(a) [repealed]. While the other provisions of §§ 309 did not repeat the repealed §§ 313 verbatim, they echoed its language. Section 309 providing a right "regardless of race, color, ancestry, religion or national origin, to be secure and protected from fear, intimidation, harassment, and physical harm caused by the activities of groups and individuals."

As a result of the confusion engendered by the unique legislative history, Chief Judge Echols of the Middle District of Tennessee certified several questions to the Tennessee Supreme Court to determine the elements of the tort of malicious harassment. *Washington v. Robertson County,* 29 S.W.3d 466 (Tenn.2000). In that case the Tennessee Supreme Court found that "the elements of the civil claim of malicious harassment under *Tenn.Code Ann.* §§ 4–21–701(1998) are derived from the criminal offense of civil rights intimidation under *Tenn.Code Ann.* §§ 39–17–309 (1997)." *Id.* at 468. The Court defined the elements required to establish a claim of malicious harassment, as follows:

Accordingly, we conclude that a claim of malicious harassment requires not only that a person acted maliciously, i.e., ill-will, hatred or spite, but also that a person unlawfully intimidated another from the free exercise or enjoyment of a constitutional right by injuring or threatening to injure or coercing another person or by damaging, destroying or defacing any real or personal property of another person.

*Id.* at 473.

The Tennessee Supreme Court, however, failed to address whether the tort of malicious harassment requires a specific intent to intimidate based on civil rights motives. Plaintiff reads the silence of *Washington* as evidence that there is not a requirement of specific intent. Not surprisingly, all of the Defendants read the silence of *Washington* and its derivation from the earlier civil rights statute of evidence that the "original meaning" of specific intent is retained.

■ In February, the Tennessee Court of Appeals held that the malicious harassment statute requires specific intent to intimidate based on civil rights motives. *Surber v. Cannon,* 2001 WL 120735 at *5 (Tenn.Ct.App.2001) citing *Vafaie v. Owens,* 1996 WL 502133 at *7 (Tenn.Ct.App.1996). As a result, Plaintiff's malicious harassment claim fails because Plaintiff cannot establish a specific intent to harass based on civil rights motives on the part of any of

the Defendants. Accordingly, the motions for summary judgment of all Defendants are GRANTED as to Plaintiff's malicious harassment claim.

### 3. Negligence and Gross Negligence

Lastly, all Defendants move for summary judgment on Plaintiff's state law claims of negligence and gross negligence. All Defendants argue that under the Tennessee Governmental Tort Liability Act ("TGTLA"), Tenn.Code Ann. § 29–20–101 *et seq.*, this Court has no jurisdiction over Plaintiff's pendent state law claims of negligence and gross negligence. The Court agrees.

■ This Court has previously decided that under the exclusivity provision of the TGTLA,[1] this Court does not have subject matter jurisdiction over actions for negligence against local governments or its officers. *See Beddingfield v. City of Pulaski*, 666 F.Supp. 1064 (M.D.Tenn.1987), *rev'd on other grounds*, 861 F.2d 968 and *Spurlock v. Whitley*, 971 F.Supp. 1166, 1185 (M.D.Tenn.1997), *aff'd sub nom. Spurlock v. Satterfield*, 167 F.3d 995 (6th Cir.1999); *see also Gregory v. Shelby County, Tennessee*, 220 F.3d 433 (6th Cir.2000)(endorsing *Beddingfield*). As a result, all Defendants' motions for summary judgment as to Plaintiff's state law claims of negligence and gross negligence are GRANTED.

### V. Conclusion

Thus, the motion of Metro as to Plaintiff's § 1983 claim is GRANTED, the motion of Sergeant Lewis as to Plaintiff's § 1983 claim is DENIED, and the motions of all Defendants as to Plaintiff's state law claims of outrageous conduct, malicious

harassment, and negligence are GRANTED.

An appropriate order will enter.

---

**1.** *Tenn.Code Ann.* §§ 29–20–307 requires that actions for negligence against governmental entities are within the "exclusive original jurisdiction" of the circuit courts and must be heard "without the intervention of a jury." All claims must be brought "in strict compliance" with the terms of the TGTLA. *Tenn. Code Ann.* §§ 29–20–201(c).