George CONNER, Plaintiff,

v.

CITY OF JACKSON, TENNESSEE and Jerry Gist, in his individual and official capacity as Mayor of the City of Jackson, Defendants.

No. 08–1146.

United States District Court,
W.D. Tennessee,
Eastern Division.

June 9, 2009.

See, also, 2009 WL 3429690.

Florence M. Johnson, Johnson & Brown, PC, Memphis, TN, for Plaintiff.

Geoffrey A. Lindley, John D. Burleson, Rainey Kizer Reviere & Bell, Jackson, TN, for Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

J. DANIEL BREEN, District Judge.

*INTRODUCTION AND BACKGROUND*

On June 18, 2008, the Plaintiff, George Conner, initiated this action against the Defendants, the City of Jackson, Tennessee (the "City") and Jerry Gist, in his individual and official capacity as Mayor of Jackson. The complaint, as amended on February 19, 2009, alleged violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981; the Tennessee Human Rights Act, § 4–21–701 ("THRA") and Tennessee common law. The Plaintiff also sought punitive damages. Before the Court is the Defendants' motion to dismiss certain claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Specifically, the Defendants seek dismissal of Plaintiff's claims of wrongful demotion under the THRA, tort under Tennessee common law and retaliation and hostile work environment under Title VII.

*STANDARD OF REVIEW*

Rule 12(b)(6) permits the Court to dismiss a complaint for failure to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6).

> The moving party has the burden of proving that no claim exists. Although a complaint is to be liberally construed, it is still necessary that the complaint contain more than bare assertions or legal conclusions. All factual allegations in the complaint must be presumed to be true, and reasonable inferences must be made in favor of the non-moving party. The court need not, however, accept unwarranted factual inferences.

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield,* 552 F.3d 430, 434 (6th Cir.2008) (internal citations omitted). In order to survive a motion to dismiss, the complaint must present sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007) (internal citations and quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.,* 550 U.S. at 555, 127 S.Ct. at 1965.

*THE COMPLAINT*

The Plaintiff has made the following allegations in his amended complaint. Conner, a black male, was employed as a firefighter beginning March 26, 1996 by the City. (Am. Compl. ¶ 7.) In May 2005, he was promoted to the position of Inspector. (Am. Compl. ¶ 8.) In order to main-

tain the position, Conner was required to successfully pass so-called "ICC Testing." (Am. Compl. ¶ 9.) He was advised by Fire Marshall Wayne Arnold and Personnel Director Lynn Henning that he would be allowed twenty-four months from the promotion date in which to pass the test. (Am. Compl. ¶ 9.) Conner was also told verbally by Arnold that he did not need to attend a state preparation class for the exam conducted in July 2005. (Am. Compl. ¶ 11.) When the Plaintiff arrived at the testing center the following October, he was informed by the test administrator that the examination had changed from the materials provided to him. (Am. Compl. ¶ 11.) Nonetheless, Conner attempted to take the test and failed. (Am. Compl. ¶¶ 11–12.)

Thereafter, Arnold advised the Plaintiff that he was not putting forth sufficient effort to pass. (Am. Compl. ¶ 13.) Conner then sought the assistance of senior inspector Teresa Reasons in preparing to take the test again. (Am. Compl. ¶ 13.) Arnold, who supervised both Conner and Reasons, instructed Reasons not to help the Plaintiff. (Am. Compl. ¶¶ 13–14.) Conner was also discouraged from continuing to seek guidance from Reasons. (Am. Compl. ¶ 13.) The Plaintiff asked Arnold if he could attend a class or obtain additional information regarding testing and was told the City would only pay for him to take the test twice and he (Arnold) did not feel a class was necessary. (Am. Compl. ¶ 15.) On May 19, 2007, he suffered a demotion to the position of Firefighter for not passing the required testing. (Am. Compl. ¶ 16.)

On May 21, 2007, Conner filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") (Am. Comp. ¶ 17.) In October 2007, the Plaintiff applied for the position of Driver with the fire department but his name did not appear on the list provided by the City

of those eligible for the position. (Am. Compl. ¶ 18.) Conner filed a second EEOC charge on November 29, 2007 regarding his nonselection for the Driver position. (Am. Compl. ¶ 19.)

## POSITIONS OF THE PARTIES AND ANALYSIS

*THRA.*

■ The Defendants argue that Conner's demotion claim under the THRA is untimely. The statute, which prohibits discrimination on the basis of "race, creed, color, religion, sex, age or national origin," *see* Tennessee Code Annotated § 4–21–401(a), provides relief via two avenues. *El–Zabet v. Nissan N. Am., Inc.,* 211 Fed. Appx. 460, 463 (6th Cir.2006). An aggrieved party may file an administrative complaint with the Tennessee Human Rights Commission (the "THRC" or the "Commission") within 180 days after the discriminatory practice and seek judicial review in the event the Commission does not rule in his favor. *See* Tenn.Code Ann. §§ 4–21–302 through 307(a). Alternatively, the plaintiff may file suit directly within one year "after the alleged discriminatory practice ceases." *See* Tenn.Code Ann. § 4–21–311(a) & (d). "The THRA's one year limitations period for bringing a direct court action is not tolled while administrative charges are pending with the THRC or the EEOC." *Martin v. Boeing–Oak Ridge Co.,* 244 F.Supp.2d 863, 872 (E.D.Tenn.2002) (citation omitted); *see also Puckett v. Tennessee Eastman Co.,* 889 F.2d 1481, 1485–86 (6th Cir.1989); *Bay v. Fairfield Resorts, Inc.,* No. 3:06–CV–306, 2006 WL 3484236, at *2 (E.D.Tenn. Nov. 30, 2006); *Burnett v. Tyco Corp.,* 932 F.Supp. 1039, 1044 (W.D.Tenn.1996).

■ The demotion occurred on May 19, 2007, thirteen months prior to the fil-

ing of the complaint. However, in his response to the motion to dismiss, Conner submits that the Defendants' actions in demoting him and thereafter failing to permit him training opportunities that could have resulted in his return to the Inspector position constituted a "continuing violation," which extended the limitations period. "The continuing violation doctrine essentially allows a plaintiff to bring a claim for discriminatory conduct that occurs outside the limitations period if the discriminatory conduct is sufficiently related to conduct occurring within the limitations period." *Booker v. Boeing Co.,* 188 S.W.3d 639, 643 (Tenn.2006). The Tennessee Supreme Court has recognized that the THRA's statute of limitations incorporates the continuing violation exception. *Id.* at 643–44; *see also Austion v. City of Clarksville,* 244 Fed.Appx. 639, 648 (6th Cir.2007). The exception applies only in two narrow instances: (1) "where there is some evidence of present discriminatory activity giving rise to a claim of a continuing violation, for example when an employer continues to presently impose disparate work assignments or pay rates between similarly situated employee groups" and (2) "where there has been a longstanding and demonstrable policy of discrimination such as an established and repeated pattern of paying men more than women." *Booker,* 188 S.W.3d at 643 (emphasis omitted). "Key to establishing [the first category of] this exception is proof that at least one of the forbidden discriminatory acts occurred within the relevant limitations period." *Id.* "To constitute such an established pattern, the plaintiff must clearly demonstrate some overarching policy of discrimination, and not merely the occurrence of an isolated incident of discriminatory conduct." *Id.* (internal quota-

tion marks omitted). The *Booker* court noted that "perhaps the most important factor supporting use of the continuing violation doctrine in employment discrimination cases is the fact that many discriminatory acts cannot be viewed as discrete incidents, and often unfold rather than occur, making it difficult to precisely pinpoint the time when they take place." *Id.* Thus, the doctrine applies not to "discrete incidents" or "individual acts of discrimination," but "when the discriminatory acts take place over time." *Id.* at 643–44. The THRA's statute of limitations "does not operate to extend the limitations period on discrete acts of discrimination." *Id.* at 647.

■ Although the Plaintiff specifically identifies the continuing violation in this case as the fact that he is still not an Inspector and, consequently, is not being paid an Inspector's salary,[1] the Court views the May 19, 2007 demotion as a discrete act. The claim does not suggest present discriminatory activity or a longstanding and demonstrable policy of discrimination. Indeed, in *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), the United States Supreme Court observed that claims arising from "termination, failure to promote, denial of transfer, or refusal to hire" were discrete acts that were "easy to identify" and not likely candidates for application of the continuing violation doctrine. *Morgan,* 536 U.S. at 114–15, 122 S.Ct. at 2073; *see also Austion,* 244 Fed.Appx. at 648 (as demotion a discrete act of discrimination under THRA, continuing violation exception did not extend limitations period).

The Plaintiff's reference to the decision of the Sixth Circuit Court of Appeals in

---

1. The Plaintiff also presents argument concerning his failure to promote claim under the THRA with respect to the Driver position.

However, the Defendants have not sought dismissal of this claim.

*Bell v. Ohio State University*, 351 F.3d 240 (6th Cir.2003) does little to convince the Court otherwise. *Bell*, a black female, was admitted to the Ohio State University College of Medicine in 1987. *Bell*, 351 F.3d at 243. She began an Independent Study Program ("ISP"), in which she had some difficulty and was warned she was in danger of failing "Med Coll 662," a requirement for advancement on to the second year of medical school. *Id.* Although she was advised to transfer to a traditional lecture program, she refused and was permitted to remain in ISP. *Id.* She failed "Med Coll 662," repeated course work in the lecture program, and then had to repeat the second year. *Id.* In her third year, Bell failed to appear for final written and clinical examinations in the internal medicine program, in which she had taken a rotation. *Id.* at 244. She was required to repeat the rotation and did so at another hospital, which did not satisfy the defendant's requirements. *Id.* Based on these issues, Bell was not permitted to graduate. *Id.* While she was later reinstated into the program, the plaintiff was ultimately dismissed from the medical school. *Id.* at 244–46.

Bell instituted an action against the university for, among other things, violation of her civil rights on the basis of race and gender, as well as intentional infliction of emotional distress. *Id.* at 246. The district court granted summary judgment on the civil rights claim under 42 U.S.C. § 1983 as time-barred. *Id.* On appeal, Bell maintained that the district court erred in finding her claims barred by the statute of limitations and rejecting application of the continuing violation theory. *Id.* at 247. The appeals court disagreed with the plaintiff, concluding, as the Court has here, that the discriminatory actions alleged to have occurred prior to the date on

which the statute of limitations began to run were discrete acts. *Id.* at 247–48.

Accordingly, the Plaintiff's demotion claim under the THRA is DISMISSED as time-barred.

*Intentional Infliction of Emotional Distress and Outrageous Conduct.*

■ As noted above, the Defendants seek dismissal of the Plaintiff's intentional infliction of emotional distress and outrageous conduct claims.[2] State law claims against governmental entities and their employees are governed by the Tennessee Governmental Tort Liability Act (the "TGTLA"). *See* Tenn.Code Ann. § 29–20–101, *et seq.* These claims would ordinarily confer supplemental jurisdiction in this Court because they arise out of the same facts and form part of the same case or controversy. *See* 28 U.S.C. § 1367(a). However, TGTLA claims must be brought in "strict compliance" with the terms of the state statute. Tenn.Code Ann. § 29–20–201(c). The TGTLA gives the state circuit courts exclusive original jurisdiction over claims brought pursuant to its provisions. Tenn.Code Ann. § 29–20–307.

■ A federal district court may, in its discretion, decline supplemental jurisdiction over a state law claim, even if jurisdiction would otherwise be proper under § 1367(a). Section 1367(c)(4) allows a district court to "decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(4).

In *Gregory v. Shelby County, Tennessee*, 220 F.3d 433 (6th Cir.2000), the Sixth Circuit affirmed the district court's dismissal of TGTLA claims, stating, "[i]n this instance, the Tennessee legislature ex-

---

**2.** In his response to the motion, the Plaintiff characterizes these claims as arising under the THRA. However, the THRA does not contain an emotional distress component.

pressed a clear preference that TGTLA claims be handled by its own state courts. This unequivocal preference of the Tennessee legislature is an exceptional circumstance for declining jurisdiction." *Gregory*, 220 F.3d at 446; *see also Maxwell v. Conn*, No. 89–5060, 1990 WL 2774 (6th Cir. Jan. 18, 1990) (stating that the TGTLA's grant of exclusive jurisdiction to the state courts "belie[d]" plaintiff's argument that he could expect to try the TGTLA claims in the same proceeding as his federal claims); *Spurlock v. Whitley*, 971 F.Supp. 1166, 1185 (M.D.Tenn.1997). Therefore, federal courts would appear obligated to apply the TGTLA limitations on suability as a matter of state substantive law. *See Fromuth v. Metro. Gov't of Nashville*, 158 F.Supp.2d 787, 798 (M.D.Tenn.2001). The Court declines to accept jurisdiction over the Plaintiff's claims brought pursuant to the TGTLA in accordance with 28 U.S.C. § 1367(c)(4). Because the Court declines to accept jurisdiction over these state claims, they are DISMISSED without prejudice

*Retaliation.*

■ The Defendants further sought dismissal in the instant motion of Conner's cause of action for failure to promote him to the Driver position in retaliation for filing his first charge of discrimination with the EEOC on the grounds that he failed to exhaust his administrative remedies under Title VII. However, as the Plaintiff has since exhausted his remedies and amended his complaint accordingly, the Defendants have withdrawn this argument as a basis for their dispositive motion. Thus, the motion to dismiss the retaliation claim is denied as moot.

*Title VII Claim Based on Hostile Work Environment.*

■ The Defendants maintain that the Plaintiff's hostile work environment claim under Title VII is subject to dismiss-

al on the grounds that he failed to exhaust his administrative remedies. "A person seeking to bring a discrimination claim under Title VII in federal court must first exhaust [his] administrative remedies." *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 731 (6th Cir.2006), *reh'g & reh'g en banc denied* (Nov. 13, 2006) (citation omitted). "This requirement exists so that the EEOC will have an opportunity to convince the parties to enter into voluntary settlement, which is the preferred means of disposing of such claims." *Id.* "The requirement, however, is not meant to be overly rigid, nor should it result in the restriction of subsequent complaints based on procedural technicalities or the failure of the charges to contain the exact wording which might be required in a judicial pleading. As a result, the EEOC complaint should be liberally construed to encompass all claims reasonably expected to grow out of the charge of discrimination." *Id.* at 732 (internal citations and quotation marks omitted). The plaintiff must show "(1) that the Title VII claims were raised directly in [his] EEOC charge or (2) that the claims included in the EEOC charge would prompt the agency to uncover the other claims during an investigation reasonably expected to grow out of the charge of discrimination." *Hollimon v. Shelby County Gov't*, 325 Fed.Appx. 406, 411 (6th Cir.2009) (internal quotation marks omitted).

In his first EEOC charge filed May 21, 2007, Conner alleged as follows:

I was hired with the above named employer on March 26, 1996. On May 23, 2005, I was promoted into the position of Inspector. Since my promotion, I have [sic] did not receive the proper training to maintain my position. I have asked Wayne Arnold, Chief/Fire Marshal[ ] on several occasions to provide me with the proper training information that pertained to my position and I was in-

formed on each occasion that he had given me what he had. On May 19, 2007, I was demoted from my position of Inspector to Firefighter. The reason given for the demotion was that I did not pass the required test to maintain my position.

I believe that I was discriminated against because of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Compl., Ex. A.) The second charge, initiated on November 29, 2007, contained the following narrative:

On May 19, 2007, I filed a charge of discrimination ... against the above named [ ] employer. As a result, I have been subjected to retaliatory actions. Specifically, I learned on August 22, 2007 during mediation that evaluations were placed in my personnel file that I previously was not made aware of. Further, I have been denied promotional opportunities to the position of Driver when my name did not appear on the Driver list as of October 15, 2007.

I believe that I have been discriminated against in retaliation for protesting unlawful activities in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Defs.' Mem. of Facts & Law in Supp. of Their Mot. to Dismiss, Ex. 2.)

 Here, neither EEOC charge contained an explicit claim of hostile work environment. Thus, the question is whether a hostile work environment claim could be reasonably expected to grow out of the discrimination and retaliation charges alleged before the EEOC. "An uncharged claim can be reasonably expected to grow out of an EEOC charge when, despite the claimant's failure to explicitly allege the claim, the facts alleged either in the charge or in a document attached to the charge would prompt the EEOC to investigate the uncharged claim." *Carter v. Delaware*

*County Bd. of Comm'rs*, No. 2:07–cv–1189, 2009 WL 544907, at *7 (S.D.Ohio Mar. 3, 2009).

 Upon review, the Court finds that Conner's hostile work environment claim does not reasonably grow out of the charged claims. In order to establish a hostile work environment, a plaintiff must show that "(1) [he] was a member of a protected class; (2)[he] was subjected to unwelcome racial harassment; (3) the harassment was based on race; (4) the harassment unreasonably interfered with [his] work performance by creating an intimidating, hostile, or offensive work environment; and (5) the employer is liable." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 515 (6th Cir.2009), *reh'g denied* (Mar. 27, 2009) (citing *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir.1999)). By way of the hostile environment claim, Title VII "offers employees protection from a workplace permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* at 514 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 20, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). The alleged acts must "meet both an objective and a subjective test, in other words, the conduct must be so severe or pervasive as to constitute a hostile or abusive working environment both to the reasonable person and the actual victim." *Grace v. USCAR*, 521 F.3d 655, 678 (6th Cir.2008), *reh'g & reh'g en banc denied* (Jul. 2, 2008) (citation and internal quotation marks omitted). Nothing in either EEOC charge would, in this Court's view, have prompted the agency to investigate a hostile work environment claim, even if read broadly. Clearly, not every act of discrimination or retaliation creates a hostile work environment. It is therefore

appropriate to DISMISS the Plaintiff's Title VII hostile work environment claim for failure to exhaust administrative remedies. *See Lomax v. Sears, Roebuck & Co.*, No. 99–6589, 2000 WL 1888715, at *6 (6th Cir. Dec. 19, 2000), *cert. denied*, 532 U.S. 1070, 121 S.Ct. 2226, 150 L.Ed.2d 217 (2001) (EEOC charge alleging only that plaintiff's work hours were reduced, he failed to receive a promotion, and was terminated because of race would not support lawsuit claim of racially hostile working environment as the claim was not part of his administrative filing, even when read broadly); *see also Jelks v. Nicholson*, No. 3:07–0550, 2008 WL 4129410, at *8 (M.D.Tenn. Aug. 2, 2008) (plaintiff's EEOC charge of discriminatory discharge based on race insufficient to support hostile working environment claim not part of the administrative filing).

### *CONCLUSION*

For the reasons set forth herein, the Defendants' motion to dismiss Plaintiff's claims for wrongful demotion under the THRA, intentional infliction of emotional distress and outrageous conduct under Tennessee common law, and hostile work environment under Title VII is GRANTED and these claims are DISMISSED without prejudice. The motion to dismiss the retaliation claim is DENIED as moot.