IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON

May 17, 2005 Session

BABAJIDE FAMILONI v. THE UNIVERSITY OF MEMPHIS

An Appeal from the Chancery Court for Shelby County
CH-04-0937-1   Walter L. Evans, Chancellor

No. W2004-02077-COA-R3-CV - Filed August 29, 2005

This case is about subject matter jurisdiction. A professor employed by the University of Memphis
filed a lawsuit in chancery court against the University, alleging claims under the Tennessee Human
Rights Act and failure to execute a settlement agreement on his discrimination claims.  The
University filed a motion to dismiss the complaint, asserting that the chancery court did not have
subject matter jurisdiction to hear contract claims against an agency of the State of Tennessee.  The
trial court granted the motion, finding that it did not have subject matter jurisdiction to hear the
complaint.  We affirm in part and reverse and remand, finding that the chancery court has subject
matter jurisdiction over claims for discrimination under the Tennessee Human Rights Act.

Tenn. R. App. P. 3 Appeal as of Right; the Judgment of the Chancery Court is Affirmed
in part, Reversed in part and Remanded

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, J., AND
DAVID R. FARMER, J., joined.

Robert L. J. Spence, Jr., Memphis, and Damon K. Griffin, Memphis, for plaintiff/appellant
Babajide Familoni

Julie Randall Pablo, Assistant Attorney General, Nashville, for defendant/appellee The
University of Memphis

MEMORANDUM OPINION[1]

        Plaintiff/Appellant Babajide Familoni, Ph.D. ("Dr. Familoni") is an engineering professor
employed by Defendant/Appellee The University of Memphis ("University").  Dr. Familoni, a native

_____

        [1]This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the
actions of the trial court by memorandum opinion when a formal opinion would have no precedential value.  When a case
is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and
shall not be cited or relied on for any reason in any unrelated case.

of Nigeria, has been employed by the University since 1987. Dr. Familoni alleged that he experienced discriminatory treatment from the University, in particular from his supervisor, the Dean of the College of Engineering, Richard Warder, Jr. ("Dean Warder"). In compliance with University procedure, Dr. Familoni registered his complaint about the discriminatory treatment by sending a confidential letter to the President of the University, Dr. V. Lane Rawlins ("President Rawlins").

In January 2000, President Rawlins responded to Dr. Familoni's concerns and advised him to discuss the issues with the Provost, Dr. Legg ("Dr. Legg"), and the President of Legal and Internal Affairs, Doris Kirby ("Kirby"). Based on this advice, Dr. Familoni wrote a letter to Kirby and Dr. Legg, detailing the incidents of discrimination to which he had been subjected while at the University.

In February 2000, Dr. Familoni received a job offer from Dr. Sandra Singer ("Dr. Singer") with Purdue University Calumet to become the Dean of their Department of Electrical Engineering. After Dr. Singer made the offer to Dr. Familoni, she asked for a reference from his supervisor, Dean Warder.

On February 14, 2000, Dean Warder told Dr. Familoni that he had spoken to Dr. Singer. Dean Warder told Dr. Familoni that he had given him a glowing recommendation overall, but had also mentioned concerns regarding Dr. Familoni's ability to manage a budget. The next day, February 15, 2000, Familoni met with Kirby to discuss his claims against the University and Dean Warder. The following day, February 16, 2000, Familoni received a phone call from Dr. Singer, withdrawing the job offer. Dr. Singer told Dr. Familoni that Dean Warder had told her that Dr. Familoni had a bad reputation, that no one liked to work with him, and that Familoni had filed a discrimination claim against him. Dr. Singer said that Dean Warder advised her that she could confirm that Dr. Familoni had filed a discrimination claim by speaking to Dr. Legg. Dr. Singer contacted Dr. Legg, who indeed confirmed to her that Dr. Familoni had filed a claim of discrimination.

Familoni continued to pursue his complaints of discrimination against the University by mailing letters to Kirby and Dr. Legg on February 28, 2000, June 1, 2000, and June 15, 2000. In January 2001, after allegedly receiving no response to his complaints, Dr. Familoni hired an attorney to resolve the matter. On January 22, 2001, the attorney sent Kirby a letter, requesting a meeting regarding Dr. Familoni's complaints.

Thereafter, the parties engaged in negotiations, apparently resulting in a tentative agreement that Dr. Familoni would receive $5,000 and one semester of paid leave. The appellate record contains a copy of an email sent August 31, 2001 from Kirby to Dr. Familoni's counsel, outlining the proposed settlement agreement. The record also contains a copy of a written settlement agreement, which was signed by Dr. Familoni and dated December 21, 2002. The written settlement agreement states that the University would provide Familoni with $5,000 in travel funds; however, the agreement also states that Dr. Familoni would be granted one year of paid leave of absence rather than one semester as stated in the email. In exchange for this, Dr. Familoni agreed to release his

claims against the University.  This written  agreement was never signed by a representative of the University.

In April 2002, Kirby requested that the proposed settlement agreement be modified to delete the $5,000 in travel funds and change the one semester of paid leave to a full academic year of paid leave.  In return, Dr. Familoni would again agree to release his discrimination claims against the University.  The record includes a copy of this modified settlement agreement, signed by Dr. Familoni and dated July 12, 2002.  This modified agreement was likewise never signed by a representative of the University.

Despite many telephone conversations and the exchange of numerous letters,  the University never signed a written settlement agreement with Dr. Familoni.  The University allegedly told Dr. Familoni that the delay was attributable to the normal bureaucratic process of the University.  Even so, allegedly in reliance on the agreement, Dr. Familoni accepted a position with Savannah State University for the academic year of 2004.  After alerting the University that he intended to proceed with the year of professional leave, Dr. Familoni alleges, the University told him that it would not honor the agreement.

On May 13, 2004, Dr. Familoni filed a complaint against the University in the Shelby County Chancery Court, alleging that the University breached the settlement agreement and that the University had violated the Tennessee Human Rights Act ("Human Rights Act") by discriminating against him.[2]  The complaint alleged that the University violated the Human Rights Act by preventing Dr. Familoni from exercising his rights under the settlement agreement and that the University was guilty of malicious harassment under Tennessee Code Annotated § 4-21-701 by inducing him into waiving his claims for discrimination, then refusing to honor the settlement agreement.  Dr. Familoni's complaint sought an award of actual damages of $150,000 for violations of the Human Rights Act, as well as punitive damages and attorney's fees.  The complaint also requested a permanent injunction to enjoin the University from wrongfully terminating Dr. Familoni's rights under the settlement agreement and from unlawfully discriminating against him.

---

[2] The Tennessee Human Rights Act is codified at Tenn. Code Ann § 4-21-101 and reads as follows:
(a) It is a discriminatory practice for an employer to:
(1) Fail or refuse to hire or discharge any person or otherwise to discriminate against an individual with respect to compensation, terms, conditions or privileges of employment because of such individual's race, creed, color, religion, sex, age or national origin; or
(2) Limit, segregate or classify an employee or applicants for employment in any way which would deprive or tend to deprive an individual of employment opportunities or otherwise adversely affect the status of an employee, because of race, creed, color, religion, sex, age or national origin.
(b) This section does not apply to the employment of an individual by such individual's parent, spouse or child or to employment in the domestic service of the employer.
T.C.A. § 4-21-101 (1998).

In response to Dr. Familoni's complaint, on May 28, 2004, the Tennessee Attorney General, acting on behalf of the University, filed a motion to dismiss. The motion to dismiss, which included a supporting memorandum of law, first alleged that the Chancery Court lacked jurisdiction to hear the matter because the Tennessee Claims Commission has exclusive jurisdiction to hear contract claims against the State. As such, the University maintained, the Chancery Court lacked subject matter jurisdiction to hear a complaint against the State for breach of contract.

The University's motion to dismiss argued further that Dr. Familoni had failed to establish a prima facie case of discrimination under the Human Rights Act. The motion stated that in order to prove discrimination, a plaintiff must show that (1) the plaintiff belongs to a protected class, (2) the plaintiff was subject to an adverse job action, (3) the employer treated similarly-situated employees with other rules more favorably, and (4) the plaintiff was qualified to do his job. ***McDonnell Douglas v. Green***, 411 U.S. 792, 802 (1973). The motion noted that the complaint stated that Familoni was from Nigeria but did not state his race. Further, the motion argued that the University's refusal to enter into a settlement agreement did not constitute a violation of the Human Rights Act and was not an adverse job action under the discrimination statutes.

In addition, the University's motion to dismiss alleges that Dr. Familoni's claims under the Human Rights Act are barred by the applicable one-year statute of limitations. The motion contends that the most recent alleged act of discrimination occurred in 2000, and that Dr. Familoni's complaint, filed in May 2004, was time barred. Further, the University noted that the parties could have agreed that the statute of limitations would be tolled during negotiations, but never did so.

In the motion to dismiss, the University also contended that Dr. Familoni's complaint for malicious harassment under Tennessee Code Annotated § 4-21-701 must be dismissed for failure to state a claim upon which relief can be granted.[3] The motion argued that Dr. Familoni presented no evidence of "ill-will, hatred, or spite" nor did Dr. Familoni present evidence that the University intimidated him from "the free enjoyment of a constitutional right" as required by Tennessee law. ***Washington v. Robertson County***, 29 S.W.3d 466, 473 (Tenn. 2000).

Finally, the University asserted in the motion to dismiss that Dr. Familoni is not entitled to injunctive relief because he had not posted bond, as required by Rule 65.05 of the Tennessee Rules of Civil Procedure, and because Dr. Familoni cannot meet the requirements for injunctive relief set forth in ***Christian Schmidt Brewing Co. v. G. Heilman Brewing Co.***, 753 F. 2d1354, 1356 (6th Cir. 1985). In particular, the University argued that Dr. Familoni could not show that he would suffer irreparable harm without the injunction.

---

[3]Tennessee Code Annotated § 4-21-701 states:
(a) There is hereby created a civil cause of action for malicious harassment.
(b) A person may be liable to the victim of malicious harassment for both special and general damages, including, but not limited to, damages for emotional distress, reasonable attorney's fees and costs, and punitive damages.
Tennessee Code Annotated § 4-21-701 (1998).

On June 1, 2004, the trial court held a hearing was to address Dr. Familoni's request for a temporary injunction because Dr. Familoni was scheduled to begin his academic leave on July 1, 2004. Prior to this hearing, the University filed an affidavit by Ralph Faudree ("Faudree"), Provost of the University of Memphis, stating that the University would grant Dr. Familoni a year of leave and that Dr. Familoni's position would be available to him upon his return. However, Faudree's affidavit stated, pursuant to the University's policy, that the year of leave would be unpaid.

After some discussion of the merits of the complaint, the parties agreed that the matter would be continued. In addition, pursuant to an agreement between the parties, the trial court entered a consent order dated June 11, 2004, confirming that the University would grant Dr. Familoni one year of unpaid leave and that the University would take no adverse employment action against Dr. Familoni. All other issues were reserved for a later hearing.

On August 6, 2004, Familoni filed an amended complaint in the Chancery Court.

On August 11, 2004, the Chancery Court heard arguments on the amended complaint and the University's motion to dismiss. The parties first disputed whether the amended complaint could be filed without permission from the trial court. The trial court found that the amended complaint was substantially the same as the initial complaint, and was filed in an attempt to clarify the issues. As a result, the trial court allowed Dr. Familoni to file the amended complaint.

As to the University's motion to dismiss, the trial court first heard arguments on the issue of subject matter jurisdiction. The University characterized the action as a breach of contract claim and contended that the Chancery Court did not have subject matter jurisdiction because, pursuant to Section 9-8-307 of the Tennessee Code Annotated, the Tennessee Claims Commission has exclusive jurisdiction to hear claims against a state agency for breach of contract.

In response, Dr. Familoni asserted that Section 9-8-307 of the Tennessee Code Annotated only applied to contracts that were executed – i.e. signed both parties to the contract. As a result, Dr. Familoni alleged, had he filed a claim before the Tennessee Claims Commission, the Claims Commission would refuse to hear the matter because the University never signed the settlement agreement. As a result, Dr. Familoni contended, the Chancery Court is the only venue with jurisdiction to hear his claim. Further, Dr. Familoni claimed, the University's failure to execute the settlement agreement was itself an act of discrimination.

After hearing the arguments, the trial court concluded that it did not have subject matter jurisdiction to hear the matter. The trial court reasoned that the "allegation regarding the racial discrimination flows from the existence of a valid contract. And if there is no valid contract, then I don't even think that we reach the issue of discrimination for failing to abide by the contract." In light of this conclusion, the trial court did not address the other issues raised in the motion to dismiss, such as whether the statute of limitations had run on Dr. Familoni's claims under the Human Rights Act. Therefore, the trial court dismissed Dr. Familoni's complaint. From this ruling, Dr. Familoni now appeals.

On appeal, Dr. Familoni again asserts that his claim falls under the Human Rights Act and that the Chancery Court has jurisdiction for claims of discrimination under this Act. Dr. Familoni argues that he has been subjected to unlawful discrimination and that pursuant to Tennessee case law and Tennessee statutory law, Chancery Court is the proper venue for his claim and the trial court erred in dismissing his claim.

The University again claims that this is a breach of contract action for which the Tennessee Claims Commission has exclusive jurisdiction. The University notes that the State of Tennessee and its agencies can only be bound by a written contract. *See* Tenn. Code Ann § 9-8-308. It maintains that neither a written nor an oral contract existed between the parties and that the mere drafting of a settlement agreement does not create a binding agreement. The University contends that Dr. Familoni's claims flow from an alleged breach of this contract, and that, as a result, Dr. Familoni has no valid claim against the State.

"Since a determination of whether subject matter jurisdiction exists is a question of law, our standard of review is de novo, without a presumption of correctness." ***Northland Ins. Co. v. State***, 33 S.W.3d 727, 729 (Tenn. 2000).

In order to determine the subject matter jurisdiction of the trial court in this case, we examine Dr. Familoni's initial complaint and the amended complaint. Both assert breach of contract as well as discrimination under the Human Rights Act. In the initial complaint, Dr. Familoni alleges that he has been subjected to racial discrimination under the Human Rights Act "*including* preventing [Dr. Familoni] from exercising his rights under the . . . Settlement Agreement." In the amended complaint, Dr. Familoni asserts that the "actions of the [University] in trying to prevent [Dr. Familoni] from exercising his rights under the . . . Settlement Agreement further evidence the history of harassment [Familoni] has suffered during his employment with [the University]." Dr. Familoni does not allege that a written contract exists with the University; to the contrary, he contends that the University discriminatorily failed to sign the proposed settlement agreement. He alleges a "breach" of the proposed settlement agreement, but also argues that the University engaged in intentional misrepresentations in the course of the negotiations, and that he relied, to his detriment, on the University's actions in negotiation of the agreement - claims sounding in quasi-contract. Thus, the claims are rooted in the original allegedly discriminatory conduct, and revolve around the later contract negotiations, but are not exclusively contract claims.

The University correctly asserts that the Tennessee Claims Commission had exclusive jurisdiction to hear "[a]ctions for breach of a written contract between the claimant and the state which was executed by one (1) or more state officers or employees with authority to execute the contract." T.C.A. § 9-8-307(a)(1)(K) (2004). Therefore, the Chancery Court would not have subject matter jurisdiction to hear claims against the University for breach of a written contract.

However, the Human Rights Act, in section 4-21-311 of the Tennessee Code Annotated, states that "[a]ny person injured by any act in violation of the provisions of this chapter shall have a civil cause of action in chancery or circuit court." T.C.A. § 4-21-311(a) (1998). Additionally, the Human

Rights act defines "employer" to include "the state, or any political or civil subdivision thereof." T.C.A. § 4-21-102(4) (1998).

This Court addressed this conflict between the statutes in ***Roberson v. University of Tennessee***, 1988 WL 74236 (Tenn. Ct. App. 1988). In ***Roberson***, this Court was presented with the same issue as the instant case – whether a chancery court has jurisdiction to hear a discrimination claim against a state agency. ***Roberson***, 1988 WL 74236, at *1. The ***Roberson*** court provided a detailed analysis of the proper resolution of the conflicting statutes and we need not restate it here. ***Id.*** at *1-*3. Under the holding of ***Roberson***, a chancery or circuit court has jurisdiction to hear claims against the state for claims arising under the Tennessee Human Rights Act. ***Id.*** at *3. Therefore, to the extent that Dr. Familoni's complaint alleges discrimination under the Human Rights Act, the Chancery Court has subject matter jurisdiction, and the trial court erred in dismissing the complaint.[4]

The decision of the trial court is affirmed in part and reversed in part, and the cause is remanded for further proceedings not inconsistent with this Opinion. Costs of this appeal are taxed one-half to Plaintiff/Appellant Babajide Familoni, and his surety, and one-half to Defendant/Appellee, the University of Memphis, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE

_____

_____

[4]We do not address other defenses to which the University refers on appeal, such as whether any claims are time-barred by the applicable statute of limitations or whether claims not based on a written contract can be asserted against the State.